FIRST STATE BANK & TRUST CO. OF HEREFORD v. VARDEMAN. (No. 1019.)

(Court of Civil Appeals of Texas. Amarillo. June 14, 1916. Rehearing Denied Oct. 11, 1916.)

1. BANKS AND BANKING ☞165—DEPOSIT OF NOTES FOR COLLECTION.

The proceeds of notes deposited with a bank for collection were held in trust by the bank for the depositor, and it had no authority to use such proceeds, except as directed by the depositor.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 571–573, 583–585; Dec. Dig. ☞165.]

2. SUBROGATION ☞26—APPLICATION OF PROCEEDS OF NOTES.

The cashier of a bank received three notes from his brother for collection, there being a written transfer of the first maturing note as collateral to the brother's individual debt to the bank. The cashier, without authority, later gave the bank a letter, directing it to place his brother's note as collateral to notes executed by him and his brother to a third party and deposited by such third party with the bank or its president for collection. The bank or its president applied the proceeds of the notes to the notes of the cashier and his brother deposited by the third party. Held, the bank was not subrogated to the rights of the third party in the notes executed by the cashier of the bank and his brother, since in subrogation the primary requirement is that the party seeking it shall have paid the debt of another, and in having done so shall not have acted as a mere volunteer, but upon compulsion or to protect his own interest.

[Ed. Note.—For other cases, see Subrogation, Cent. Dig. § 67; Dec. Dig. ☞26.]

Appeal from District Court, Deaf Smith County; D. B. Hill, Judge.

Action by Winfred Vardeman against the First State Bank & Trust Company of Hereford. From a judgment for plaintiff, defendant appeals. Affirmed.

Gilliland & Estes, of Hereford, for appellant. Russell & Dameron and S. J. Dodson, all of Hereford, and Kimbrough, Underwood & Jackson, of Amarillo, for appellee.

HUFF, C. J. The only issue presented on this appeal is whether the trial court should have held that the appellant Bank & Trust Company was, under the facts of this case, and the findings of the jury, subrogated to the rights of the holder and owner, Arnold, of two notes for $575 each, made payable to one Clapp, and executed by Winfred Vardeman and Otho Vardeman, and indorsed by Clapp to Arnold and held by appellant or its president, S. B. Edwards, for collection, and which were paid by appellant out of funds belonging to appellee; and whether the judgment should have been rendered for a sum less the amount of the two notes.

The jury, in answer to special issue No. 5,

find that the appellant in good faith paid the two $575 notes out of the proceeds of the two McCane notes, last to mature. The facts in this case will support the finding that appellee owned a section of land in Lipscomb county, which he sold to one McCane, in April, 1910, receiving a cash payment of $1,760 and took three notes for $1,333.33⅓ each, due respectively in one, two, and three years after date; the last note maturing May, 1913.

Prior to the sale and at the time appellee was indebted to appellant in the sum of about $2,700, which was secured by deed of trust on the section of land in Lipscomb county, except about $300 of the $2,700, which was unsecured. The understanding between appellant and appellee was that when the land was sold the cash payment should be credited on the indebtedness due appellant, and that the note received for the land first maturing should be placed up as collateral to the balance due on the indebtedness. This was done when the land was sold to McCane, the appellant taking the appellee's note for $1,000 and a transfer of the first maturing McCane note for $1,333.33⅓, as collateral thereto; the other two McCane notes were left in the bank for collection. The bank collected the two latter notes on or about the date of their maturity, and applied the proceeds on some other indebtedness owing it by what is known as the Sims note, an indebtedness owing it by Otho Vardeman, a brother of appellee. who had formerly been cashier of appellant bank, and who was acting in that capacity at the time the notes and trade above mentioned were executed and made, and the notes left with the bank. The bank, or Edwards, the then president of the bank, also applied part of the proceeds collected from the McCane notes to the two notes owned by Arnold for $575, and paid off these two notes with the funds so collected on the McCane notes. S. B. Edwards, president, testified he held personally the two notes for Arnold for collection, together with some $40,000 or $50,000 of other paper belonging to Arnold. On June 9, 1913, the bank passed to the credit of Arnold, from the funds so collected on appellee's note, the sum of $509, and on December 24, 1913, the bank passed to the credit of Arnold of the funds so collected, due appellee, $1,075.40. Previous to either of these dates, possibly in May or June, 1912, the appellee demanded of the bank the notes placed in it for collection. This demand was made through an attorney, Mr. Roloson. At that time the bank notified Roloson there were no notes there belonging to appellee, to which he was entitled; that the notes it had were held as collateral. It appears the bank claimed the notes were held to secure an indebtedness of one Simms, but it was admitted by Edwards there was no promise on the part of appellee to pay this note, either verbally or in writing; and it also claimed it was collateral to a note of Otho Vardeman, due the bank. The bank applied the proceeds from the McCane notes to the two above-named notes. By special findings, the jury find no liability on the part of appellee for these two last-mentioned notes, and found against appellant as to their contention of which no complaint is here made. It appears that Otho Vardeman, some time after the bank had possession of the McCane notes, and as we understand from the record, after he had ceased to be cashier thereof, directed the bank to hold the McCane notes as collateral on the Arnold notes. In his testimony in this case he admits he had no authority from appellee to place his notes as collateral to the Arnold notes. The testimony of Edwards, the president, is that the appellee never authorized him to apply or appropriate the money collected on appellee's note, either verbally or in writing, to apply on Arnold's note, and he admits that he never, at any time, mentioned the Arnold notes to appellee. The bank passed the money received on the notes to Arnold's credit after Roloson demanded the notes, and it is inferable it did this after it knew that appellee was claiming the notes or proceeds thereof should not go on the Arnold note. The two $575 notes were executed to Oscar Clapp by Otho and Winfred Vardeman, for part of the purchase money of one-half of a section of land out of section 147, in Lipscomb county. We believe the facts will warrant the inference that these notes were executed to pay for Otho's one-fourth of the land so purchased, and that appellee, in fact, paid all his part of the purchase money for his one-fourth interest, and the two notes were not in fact his debt. The bank, it appears, contended that the section for which the three McCane notes were executed, belonged to Otho and Winfred Vardeman. The evidence shows, and is uncontradicted, that appellee alone owned that section and that Otho had no interest in it.

[1, 2] The facts are sufficient to warrant the finding of the trial court that after the payment of the appellee's individual indebtedness out of the note first maturing, the bank had only the authority to collect the other notes, and that they were not held as collateral to any other debt; that as between Otho and Winfred Vardeman, the two $575 notes were the debt of Otho, and that he had no authority to pledge appellee's note to the payment of these two notes, and that the bank had notice of such fact when he attempted to do so; that the two notes for $575 each were not the property of the bank, but were held only for collection; that appellee did not authorize the bank to apply the proceeds from his note to the payment of the Arnold notes held for collection; that before the bank passed to Arnold's credit sufficient

of the proceeds from appellee's notes to discharge the Arnold notes, appellee had demanded his notes, which appellant refused to deliver, and thereafter collected and passed the proceeds to the credit of Arnold for the purpose of paying his two notes; at that time it had no such authority; and that the fund was appellee's, over which Otho had no control. The proceeds collected were held in trust by appellant for appellee, and it had no authority to use the same except as directed by appellee. There was no request made of appellee by appellant to pay the two Arnold notes, and there was no request by Otho Vardeman of appellant to pay the two notes for him, but only a direction to use his brother's property as security on the two notes which he had no right or power from his brother to do. Under the facts of this case there was no subrogation by agreement, and none in law or in equity. Appellant does not purport to have paid these notes out of its own funds, but took appellee's money, held in trust, to pay the notes, and this was without authority from appellee or from any one who had authority from him. So far as the facts show, appellant is out nothing. It paid nothing of its own; it attempted to pay one man's money held by it on another man's note, held by it, for collection, and this without authority so to do. In so far as the appellant was concerned, it was none of its business if appellee was one of the makers of the two notes. It had no power to force him to pay it; that was a matter for the other parties. Appellant could not arbitrarily set itself up as a court and adjust the rights of the parties; at least without consulting one of the parties at interest, and the one whose money was being used for. that purpose. Its trust relation gave it no such powers. In subrogation the primary requirement is that the party seeking subrogation must have paid the debt of another, and, in doing so, he must not act as a mere volunteer, but upon compulsion or to protect his own interest, etc. Tarver v. Land Mortg. Bank, 7 Tex. Civ. App. 425, 27· S. W. 40; Park v. Kribs, 24 Tex. Civ. App. 650, 60 S. W. 905.

The bank in this case did not pay the debt, but sought unlawfully and without authority to use appellee's money and to apply it upon a debt appellant assumed appellee should pay. It, perhaps, is true if appellant had been requested to pay the debt and it had done so upon such request, it could invoke subrogation. Oury v. Saunders, 77 Tex. 278, 13 S. W. 1030; Whitselle v. Texas, etc., 27 S. W. 309. However in this case, there is no pretense that appellee requested the bank to pay the debt. The only semblance of a request is that the brother, Otho, authorized it to hold appellee's note as collateral to the Arnold notes. This was not a request to pay, and the bank did not pay, but took appellee's

money and passed it to Arnold's credit. There was therefore no implied promise on the part of Otho, if the proceeds were so passed, he would pay the debt. If such can be claimed to prevent a fraud, it cannot affect the appellee, who was not a party to it, and did not induce the appellant so to act. When the notes of appellee were placed in possession of the bank, there was a written transfer of the first maturing note as collateral to appellee's individual debt to the bank; the other two notes were delivered and held by the bank for collection. Otho Vardeman, at the time of receiving the notes, was cashier of the bank, and acting for it. The facts are undisputed that these two notes were so held, and the bank must ·be held as charged with notice of the cashier's knowledge when he received the notes. After this, the bank procured a letter from Otho, directing it to place his brother's note as collateral to the two Arnold notes. The bank was then holding the notes under the original instruction and trust given by appellee; it knew ·or must have known, of these instructions. It, however, assumed Otho had authority to place them as collateral. It knew he did not own them, and knew how it got possession of the notes. It is significant in this case that the bank was careful not to notify appellee that it held the Arnold notes, or to make a request of him of any sort, with reference thereto.

While the jury find in this case good faith on the part of the bank, in using the proceeds of appellee's notes to pay the Arnold notes, in the light of the undisputed facts, the payment was made out of appellee's funds. They may have believed that appellant acted in good faith in believing Otho could so use his brother's property to pay his own debt. The undisputed facts are however, he had no such right or power, and the facts will not warrant the conclusion that the appellee induced appellant so to believe.

We believe the court, under the facts of this case, as well as the findings of the jury, correctly entered judgment for the appellee for the amount thereof, and the judgment will be affirmed.