## FIRST STATE BANK & TRUST CO. OF HEREFORD v. VARDEMAN.
(No. 122–2992.)

(Commission of Appeals of Texas, Section A. May 19, 1920.)

Subrogation ⬤�longdash26 — Bank using proceeds of collection for plaintiff to pay joint notes due third person not entitled to subrogation.

Defendant bank, which without authority, but in good faith, applied proceeds of plaintiff's notes left with it for collection to payment of notes of plaintiff and his brother to A., also left with it for collection, on which, as between plaintiff and his brother, the brother alone was obligated, is not entitled to subrogation to A.'s rights as against plaintiff, because this would deprive plaintiff of one of his legal rights without his consent, and without wrongdoing on his part, and because subrogation should be enforced only where it will benefit a meritorious claim without doing injustice to others.

Error to Court of Civil Appeals of Seventh Supreme Judicial District.

Action by Winfred Vardeman against the First State Bank & Trust Company of Hereford. Judgment for plaintiff was affirmed by the Court of Civil Appeals (188 S. W. 695), and defendant brings error. Affirmed.

Gilliland & Estes, of Hereford, for plaintiff in error.

S. J. Dodson, of El Paso, Russell & Dameron, of Hereford, and Kimbrough, Underwood & Jackson, of Amarillo, for defendant in error.

TAYLOR, C. Winfred Vardeman, plaintiff, sued the First State Bank & Trust Company of Hereford, defendant, alleging that the bank had converted a part of the proceeds of a series of three vendor's lien notes payable to him, and of which at the time of their collection by the bank he was the owner.

The notes were executed in part payment for a section of land in Lipscomb county, sold by plaintiff in April, 1910, to Sam McCane, and were for the sum of $1,333.33 each, carrying vendor's lien, due respectively in one, two, and three years after date, the last maturing in May, 1913.

The bank secured possession of the three notes in the following manner: Winfred Vardeman was indebted to it in the sum of about $2,700, all of which, except $300, was secured by a deed of trust on his Lipscomb county land. He had contracted with Sam McCane to convey to him the land for a consideration of $5,760, $1,760 to be paid in cash, the remainder to be evidenced by the three notes above referred to. In order to consummate sale, it was necessary to secure a release of the bank's deed of trust. Winfred Vardeman, through his brother Otho,

who at the time of the sale of the land was cashier of the bank, and through S. B. Edwards, its president, secured a release of the deed of trust on the following terms: The $1,760 cash payment for the land was to be applied as a credit on Winfred Vardeman's indebtedness to the bank; and one of the McCane notes, the first to mature, was to be assigned to the bank to secure the payment of the balance of his indebtedness. Pursuant to the terms of the agreement, the cash payment was so applied, and Winfred Vardeman executed a new note for $1,000, payable to the bank, for the balance due, and assigned to it by written indorsement the first note of the McCane series to secure its payment. The other two McCane notes were turned over to the bank for collection without indorsement.

The transactions detailed above were completed in May, 1910. On July 1, 1910, Otho Vardeman resigned his position as cashier, and moved to Kansas City. Winfred at that time was living in Jones county, and later returned to his former home in Kentucky, where he was residing at the time of the trial.

In the meantime one Arnold, who was a stockholder in the bank, had acquired from Oscar Clapp two notes for $545 each, executed by Otho and Winfred Vardeman jointly in 1908, in consideration of the conveyance by Clapp to them of an undivided one-half interest in another section of land in Lipscomb county. Arnold had placed the two notes, together with other notes aggregating in amount about $50,000, with the bank for collection. Otho, prior to the conveyance by Clapp, was owner of a one-half interest in the section, and after he and his brother acquired Clapp's one-half interest was owner of a three-fourths undivided interest, and Winfred was owner of a one-fourth interest. While Otho and Winfred Vardeman, as to Arnold, were obligated on the notes, as between the Vardemans Otho alone was obligated.

On November 12, 1910, about four months after Otho resigned as cashier, he wrote the bank to hold the two McCane notes last to mature as collateral to secure the payment to Arnold of the Clapp notes. Otho Vardeman owned no interest in the McCane notes, or in the section of land securing their payment, and Winfred Vardeman gave him no authority to direct that they be so held.

Winfred, through his attorney, Mr. Roloson, in 1912, and before the third of the McCane notes maturing in May, 1913, had been collected, made demand upon it for his notes or the proceeds, except the amount necessary to pay his $1,000 note. The bank in the meantime had applied a part of the proceeds collected, and with what was subsequently applied paid not only Winfred Var-

deman's indebtedness to the bank, but also paid off the Clapp notes to Arnold, Otho's note of about $700, and the Sims note for $300, which Otho had stated to the president of the bank he would pay. There remained of the proceeds of the McCane notes, after deducting the aggregate amount of the notes and interest paid, the sum of $911, for which the bank issued a cashier's check in May, 1914, and which it was holding at the time of trial.

Winfred Vardeman, upon the refusal of the bank to deliver to him either the Mc-Cane notes, or the balance of the proceeds remaining after paying his $1,000 note, filed this suit, alleging conversion.

The bank filed a general denial, and pleaded specially that the McCane notes were placed with it originally to secure the payment of not only Winfred Vardeman's $1,-000 note, but also to secure the payment of Otho Vardeman's $700 note and the Sims note, which he had verbally agreed to pay.

The bank pleaded also that Otho Vardeman had given it authority, through the letter of November 12th above referred to, to hold the last two notes of the McCane series to secure the payment of the two Clapp notes acquired by Arnold; that, if it was not authorized by plaintiff to apply the proceeds of the McCane notes in payment of the Clapp notes, it nevertheless so applied them in good faith, believing it had a right to do so; that it was therefore subrogated to the rights of Arnold, the owner of the Clapp notes.

A part of the testimony of S. B. Edwards, president of the bank, follows:

"I have known since 1912 that Winfred Vardeman was claiming that we had no authority to pay out his money on some of these items; I don't know about all the items. * * *

"I never mentioned these Arnold notes in my life to Winfred Vardeman, and he never at any time in any manner authorized me to pay these Arnold notes out of any money that he had in the bank. * * *

"I knew that Vardeman owed these notes, and we just paid them; he was one of the makers of these notes. We were mighty glad to help Mr. Arnold out. He was a prominent stockholder in that bank, although he wasn't a citizen of this town at that time. I was attending to Mr. Arnold's business here, and I had $40,000 or $50,000 worth of his notes. * * *

"As president of the bank, I paid these Arnold notes with the proceeds of these notes [McCane notes]. Winfred Vardeman had signed the Arnold notes. I paid the notes without any authority from Winfred Vardeman to pay them unless signing the notes [Arnold notes] is authority, and I think it is."

"I knew that the legal title [to the Winfred Vardeman section of land] was in his [Winfred's] name, but I knew that they both said that they both owned the land in this conversation in the bank [in February, 1910]. I don't know that Winfred Vardeman said it. I did not testify a moment ago that both of them said they owned it jointly. I wouldn't testify that Winfred Vardeman said that Otho owned it [the Winfred Vardeman section]. I didn't think it was necessary to have Otho join in these papers. I don't know that I took the papers. I made no objection later, and I didn't tell Otho to put his name on when I heard that. I only had their word for it that Otho owned an interest in it, and I won't say that I had Winfred's word for it."

There was no pleading by the bank of fraud or deceit on the part of plaintiff.

The case was tried on five special issues, in answer to four of which the jury found that the section of land in Lipscomb county for which the McCane notes were given in part payment was owned by Winfred Vardeman; that Winfred Vardeman did not authorize the bank to hold the McCane notes to secure the payment of the Sims note; that Otho Vardeman did not place the McCane note first to mature with the bank as collateral to secure Otho Vardeman's note for $700.

In response to the fifth special issue, the jury found that the bank in making payment of the two Clapp notes for $575 each out of the proceeds of the two McCane notes last to mature, did so in good faith.

Judgment was rendered upon the jury finding for plaintiff for the amount sued for. The court of Civil Appeals affirmed the judgment. 188 S. W. 695. Writ was granted upon application referred to the committee of judges.

The sole question for determination is whether the trial court erred in holding that the bank, in paying the Arnold notes, under the circumstances stated, out of the proceeds of the McCane notes, was subrogated to the rights of Arnold; in other words, whether the bank in making such payment in good faith became subrogated to the rights of Arnold.

The findings of the jury eliminated all the issues in the case, unless the bank's good faith alone is sufficient to entitle it, as against the rights of Winfred Vardeman, to subrogation. We think it is not, and at the expense of some repetition will state two reasons which, in our opinion, are fundamental in support of our conclusion.

The first is that to subrogate the bank would result in depriving Winfred Vardeman of one of his legal rights without his consent, and without wrongdoing upon his part.

It is true that at the time the bank assumed to act for him he had not paid off to Arnold the notes upon which he and his brother Otho were ultimately bound as joint obligors; but, in so far as the bank and Otho were concerned, that was his right. The bank not only did not use its money in paying the Arnold notes, but paid them with funds held in its custody for plaintiff, upon an obligation in which it had no interest and

was not legally bound to discharge. Nor was it acting, in paying over the money to Arnold, for the protection of any legal right. Otho Vardeman had no authority to instruct the bank to hold the McCane notes to secure the payment of Arnold's. The bank, in applying the proceeds, acted upon such instruction, believing that Winfred's notes held by it were the property of both the Vardemans. In paying the Arnold notes, it acted in good faith, but without authority or legal warrant. Its acting in good faith can mean, in the light of all the circumstances, nothing more than that it acted honestly, and in the belief that Otho and Winfred Vardeman owned the McCane notes jointly, and that Otho had authority to direct that they be held to secure the payment of the Arnold notes. Such good faith could not, however, in our opinion, supply either Otho's or the bank's lack of authority. Subrogation, being a doctrine of mere equity and benevolence, will not be enforced at the expense of a legal right. Sheldon on Subrogation (2d Ed.) § 6.

The second reason for not applying the remedy of subrogation in favor of the bank is that to do so would violate an established principle of equity, to wit, that·subrogation should be enforced only where it will benefit a meritorious claim without doing injustice to others. Sheldon on· Subrogation (2d Ed.) § 170.

The Court of Civil Appeals states that the facts warrant the inference that, as between the Vardemans, it became the duty of Otho to pay the entire Arnold debt. Otho, if he had paid it, would have had no rights as against Winfred. Certainly the bank, acting at the instance of Otho in paying the debt with Winfred's money, did not place itself in any better position as against him than Otho would have occupied had he paid it out of his own funds. To subrogate the bank to Arnold's rights as against Winfred would result, under the facts, in enriching Otho, the joint debtor, who instructed the bank, without authority, to use money not his own, and in Winfred's paying Otho's pro rata part of their joint liability, and also his own pro rata part, which Otho, as between them, owed. Granting that to the extent of the bank's good faith its claim is meritorious, its· enforcement would work an injustice to plaintiff, and could not, therefore, be equitable. The bank, as to Otho, was not a volunteer, but as to Winfred, while not a meddler,·was at best but a good-faith volunteer.

Whether the bank would be entitled to subrogation to the rights of Arnold as against Otho Vardeman in a proper action in which the equities of all parties could be adjusted is not in the case; nor is the question before us as to whether the bank, through Otho

Vardeman, its cashier, had notice of the purpose for which the McCane notes were held.

It is clear, we think, as held by the Court of Civil Appeals, that the bank is not entitled to subrogation as against Winfred Vardeman.

We recommend that the judgments of the district court and Court of Civil Appeals be affirmed.

PHILLIPS, C. J. We approve the judgment recommended in this case.