**PETERSON et al. v. CLAY.  (No. 1714.)**

(Court of Civil Appeals of Texas. Amarillo.
Nov. 24, 1920. Rehearing Denied
Dec. 22, 1920.)

**1. Trial ☞356(1)—Court cannot make finding on issue submitted to jury.**

Court, having submitted an issue to the jury, was not warranted in making a finding thereon himself, notwithstanding the jury had not answered the issue.

**2. Judgment ☞28—Error in deciding issue submitted to jury did not invalidate entire judgment.**

In an action to recover cattle, where defendants made a third person a party defendant and prayed for judgment against him in event of recovery of the cattle by plaintiff, error of the court in making a finding as to the value of the cattle, in that it had submitted such issue to the jury and the jury had not answered it, did not invalidate the portion of the judgment in favor of plaintiff, but invalidated the portion of the judgment in favor of the original defendants against the third party.

**3. Principal and agent ☞171(7)—No ratification of unauthorized sale by failure to tender amount not actually received.**

Failure to offer to repay money given for cattle was no ratification of an unauthorized sale, where the agent had applied the proceeds of the sale to the payment of debts of the owner, especially where the owner denied that he owed such debts.

**4. Trial ☞352(4)—Court should submit issues so as to conform to particular facts.**

Trial courts should submit issues so as to conform to the particular facts in the case under trial.

**5. Trial ☞352(4)—Issue held not submitted so as to conform to particular facts.**

In an action to recover cattle sold by an alleged authorized agent, where such agent

testified that he had authority to sell any cattle to pay the bills any time necessary, and defendants submitted the issue, "Did the plaintiff, C., in the year 1918, authorize F. to sell of the cattle he had at that time near L. enough of the cattle to pay the indebtedness that F. had contracted for the benefit of the plaintiff, if any?" if so, "then you will answer if the cattle in controversy were some of the cattle that plaintiff authorized F. to sell," court erred in submitting the issue, "Did the plaintiff, C., authorize F. to sell the cattle in controversy in this suit?" since the jury may have come to the conclusion that the court was inquiring for the specific authority for the sale of the particular cattle in suit.

**6. Trial ☞60(2)—Bill of sale by agent held admissible in connection with issue as to authority to sell.**

In an action to recover cattle alleged to have been sold without authority, the bill of sale of the alleged unauthorized agent, although not admissible as establishing the agency, was admissible in connection with other proof of agency to identify the cattle and to sustain the defendant's title, provided there was sufficient evidence of agency.

**7. Appeal and error ☞1057(2)—Rejection of competent evidence held harmless.**

In an action to recover cattle alleged to have been sold without authority, exclusion of a bill of sale was not reversible error where there was no dispute as to the fact that the alleged agent had sold the cattle to defendant and claimed to sell them as agent for the plaintiff.

**8. Evidence ☞271(19)—Self-serving declarations in letters inadmissible.**

In an action to recover cattle alleged to have been sold without authority, letters written by the alleged agent which were in a nature of self-serving declarations were inadmissible.

**9. Evidence ☞114—Certain evidence held admissible as corroborative.**

In an action to recover cattle alleged to have been sold by an agent without authority, where agent claimed that he had authority to sell cattle to pay debts contracted for, labor, etc., testimony of a witness tending to show that the agent had contracted debts was admissible, although the witness did not know what the contract between the owner and the agent was.

**10. New trial ☞102(8)—Insufficient diligence to procure newly discovered evidence.**

Where the materiality of certain evidence became known to the defendants before the close of the trial, they should have promptly asked for a continuance or a postponement in order to secure such evidence, and, having failed to do so, they did not use sufficient diligence to require the granting of a new trial.

Appeal from District Court, Lipscomb County; W. R. Ewing, Judge.

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Action by R. P. Clay against Newton Peterson and others. Judgment for plaintiff, and defendants appeal. Reversed and remanded.

H. L. Adkins, of Higgins, and W. H. Sewell, of Lipscomb, for appellants.

Hoover, Hoover & Willis, of Canadian, and E. C. Gray, of Higgins, for appellee.

BOYCE, J. R. P. Clay brought this suit against F. H. Phenis and Newton Peterson to recover 36 head of cattle. He sequestered the cattle and afterwards took them under a replevin bond. Phenis and Peterson answered and made J. T. Breen a party defendant, alleging that they had purchased said cattle from said Breen, who had warranted the title, and praying for a judgment against the said Breen on his warranty in the event plaintiff, Clay, should recover against them. The said Breen answered that the plaintiff, acting through Fisher & Wilson, his duly authorized agents, had sold said cattle to parties through whom they acquired title. The said Breen also pleaded a ratification of the sale made by Fisher & Wilson.

There is no controversy about the fact that these 36 head of cattle are a part of a herd of 500 head of cattle, formerly owned by plaintiff, Clay, and that they are also a part of a number of cattle out of said original herd sold by Fisher & Wilson, who claimed to have acted as agents of Clay in making such sale. The defendant Breen offered evidence to the effect that in the spring of the year 1918 the plaintiff made a contract with Fisher & Wilson by which they were to receive the said 500 head of cattle belonging to plaintiff and look after them for the plaintiff during the grazing season of 1918, providing them with the necessary feed, pasturage, and care, and by which the said Fisher & Wilson were authorized to contract for the plaintiff whatever debts might be necessary for such purpose; that the said Fisher & Wilson received said cattle and did contract debts in caring for them, and that in June, 1918, the said Clay authorized the said Fisher & Wilson to sell as many of said cattle as might be necessary to pay the debts so incurred; that in pursuance of this authority they sold 70 head of such cattle, which included the 36 head of cattle subsequently bought by Phenis and Peterson. They further pleaded that plaintiff learned of such facts but had not offered to repay the amount of debts so paid by the said Fisher & Wilson out of the proceeds of the sale of said cattle. The plaintiff, Clay, controverted this testimony and offered testimony to the effect that said Fisher & Wilson were not authorized to contract debts in his behalf or to sell the cattle for any purpose.

The court submitted two issues to the jury: First, as to whether Fisher & Wilson were authorized to make the sale; and, second, an issue as to the value of the cattle at the time they were replevied by Clay. The jury answered the first issue in the negative and returned no answer to the second. The court entered judgment for the plaintiff for the recovery of the cattle and in favor of Phenis and Peterson against Breen for $2,160.

[1, 2] Appellants' first complaint is that no judgment could be rendered on the verdict of the jury because there was no finding in answer to the question as to the value of the cattle, an answer to which was necessary to dispose of the issues between the two sets of defendants. It is true that the court, having submitted the issue of value to the jury, was not warranted in making a finding thereon himself, notwithstanding the jury had not answered the issue, and this part of the judgment is unauthorized; but the verdict and judgment sufficiently dispose of all the issues in so far as the plaintiff's rights are concerned. He had judgment for the cattle; he had the cattle already, having taken them under the replevin bond, so that it was not necessary, so far as he was concerned, that their value be fixed. If there were no other error which would require a reversal of the case, we might affirm the judgment as to Clay and reverse it for a disposition of the issues between the defendants. Doolen v. Hulsey, 192 S. W. 368, and authorities there cited.

[3] The second assignment complains of the refusal of the court to submit issues requiring a finding of the jury (1) as to whether plaintiff had employed Fisher & Wilson to look after said cattle; (2) whether they were authorized to contract debts for the said plaintiff; (3) whether they did contract debts; (4) whether the cattle were sold by Fisher & Wilson and the proceeds applied to the payment of these debts; (5) whether plaintiff heard that the proceeds of the sale had been so applied; (6) whether the plaintiff had tendered to defendants any money representing the amount which Fisher & Wilson had paid for his benefit out of the proceeds of the sale of the cattle. The proposition under this assignment asserts that an answer to these issues favorable to the defendant's contention as to the facts would have been sufficient to establish a ratification of the sale by the plaintiff. We do not think there was any error in refusing to submit these issues because a ratification would not have been thereby established. The defendant denied that he owed these debts, and though it should be ultimately held that he did owe them, yet he had the right, if he saw fit, to contest them, to arrange for their payment in his own way, and to be finally forced to their payment by lawful means. If the law should require him to offer to pay the debts before he could recover his property sold without his authority, it would thus approve the unlawful method of forcing the payment of the debts. The mere failure to offer to pay the debts discharged by the unlawful sale can-

not be such voluntary acceptance of the benefits of the unauthorized act as to constitute a ratification. Mechem on Agency (2d Ed.) pars. 436, 445. In any event, we do not understand how Phenis and Peterson could be held to be subrogated to the rights of the creditors in such case. First State Bank & Trust Co. v. Vardeman, 188 S. W. 695; Id. (Com. App.) 221 S. W. 585.

[4, 5] The third and fourth assignments complain of the manner of the submission of the issue of the authority of Fisher & Wilson to sell the cattle and the refusal of the court to submit requested issues which conformed more specifically to the particular facts pleaded and in support of which evidence was offered. We sustain these assignments. The issue as submitted reads:

"Did the plaintiff, R. P. Clay, authorize Fisher & Wilson to sell the cattle in controversy in this suit?"

The issues requested by the appellant are as follows:

1. "Did the plaintiff, R. P. Clay, in the year 1918, authorize Fisher & Wilson to sell of the cattle he had at that time near Leedy, Okl., enough of the cattle to pay the indebtedness that Fisher & Wilson had contracted for the benefit of the plaintiff, if any?"

2. "If you have answered defendant's special interrogatory No. 7 [being the foregoing issue] 'Yes,' then you will answer whether the cattle in controversy were some of the cattle that plaintiff authorized Fisher & Wilson to sell."

Trial courts should submit issues so as to conform to the particular facts in the case under trial. The issues requested did this in clear and simple language, while the issue as submitted was general and apt to be confusing, especially in view of the cross-examination by the plaintiff of the witness Wilson, who testified as to the authority of Fisher & Wilson to make the sale. This witness, after having testified that the plaintiff, Clay, had authorized Fisher & Wilson to sell as many of the cattle as was necessary to pay the indebtedness which had been incurred for their care, was asked this question by plaintiff's counsel on cross-examination:

"Q. You didn't have a special direction from Mr. Clay to sell those particular cattle, did you? A. We had authority to sell any cattle to pay the bills any time necessary. No, sir; at the time we sold the two cars of cattle to Moore & Haynes we did not have specific instructions from Clay to sell those particular cattle at that time."

The question and answer were repeated in substance as to the sale of its 70 head of cattle, and plaintiff's counsel asked this further question:

"Now, the only authority from any person that you had to make these sales of these particular cattle was the general authority you say you had from Mr. Clay?"

To which the witness answered:

"That was specific authority and certainly that was the only authority we had from anybody."

It will thus be seen that the witness was in effect made to say that Fisher & Wilson had no specific authority to sell these particular cattle, and while it is true that the general authority, if it were given, and the cattle sold in pursuance thereto, would protect the sale of these cattle, yet since the issue put to the jury by the court was in nearly the same language as the question put to the witness Wilson by the plaintiff's counsel, the jury may have come to the conclusion that the court was inquiring as to specific authority for the sale of these particular cattle, as stressed by plaintiff's counsel 'in his examination of the witness. The defendant made proper exception to the submission of the issue, and under the circumstances we think these objections should have been sustained and the issue submitted as requested by the appellant.

[6, 7] The bill of sale referred to in the fifth assignment was admissible, though not as establishing the agency of Fisher & Wilson; but in connection with other proof of agency it was admissible to identify the cattle and sustain the defendant's title, provided, of course, there was sufficient evidence of the agency of Fisher & Wilson. However, as there was no dispute as to the fact that Fisher & Wilson had sold these cattle and claimed to sell them as agents for Clay, the rejection of the bill of sale would not require a reversal of the case.

[8] The letters written by Fisher & Wilson in July, 1918, referred to in the sixth and seventh assignments of error, were not admissible, because they are in the nature of self-serving declarations and do not come within any of the exceptions to the rule requiring the rejection of such statements. Ætna Insurance Co. v. Eastman, 95 Tex. 34, 64 S. W. 863; National State Bank v. Ricketts, 152 S. W. 649, par. 5, and authorities there cited.

[9] The testimony of the witness Stout, referred to in the eighth assignment, was admissible as corroborating the testimony offered to show that Fisher & Wilson had contracted debts for labor, supplies, etc., which were used in the care of these cattle. While the witness might not have known what the contract between Fisher & Wilson and Clay was, yet the defendants did not have to establish all of their defense by one witness. They offered other evidence to show that Fisher & Wilson were authorized to incur expense in the care of these cattle, and the testimony of this witness was competent to show that the various items of expenditure claimed by Fisher & Wilson to have been made were as a matter of fact incurred in the care of these cattle.

[10] We overrule the ninth assignment. The appellants did not show sufficient diligence to procure the evidence referred to in this assignment as newly discovered evidence. The materiality of this evidence, if it is material, and its existence, became known to the defendants before the close of the trial. They should have promptly asked for a continuance or a postponement in order to secure such evidence.

For the reasons stated, the judgment will be reversed and the cause remanded.

⬥For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes