Janie A. CASTILLO and Mario L. Castillo, Appellants,

v.

NEELY'S TBA DEALER SUPPLY, INC., Appellee.

No. 01–89–00022–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Aug. 10, 1989.
Rehearing Denied Sept. 14, 1989.

OPINION

Maurice Bresenhan, Jr., Campbell, Athey, Zukowski & Bresenhan, Houston, for appellants.

Terry G. Fry, Weitinger & Tucker, Henry Giessel, Giessel, Stone, Barker & Lyman, Houston, for appellee.

Before COHEN, SAM BASS and MIRABAL, JJ.

COHEN, Justice.

Janie and Mario Castillo sued her former employer, Neely's TBA Dealer Supply, Inc. ("Neely's") and Neely's group insurer, American Hardware Mutual Insurance Co. ("American"), asserting that Neely's had deprived Mrs. Castillo of health insurance by failing to tell her that, in order to be covered without proving good health, she had to apply between the 90th and 120th day after beginning employment. The jury found that Neely's negligence was the sole proximate cause of Mrs. Castillo not being insured and found damages exceeding $3.2 million, including $1 million to Mr. Castillo. The trial court granted Neely's motion for judgment notwithstanding the verdict and found there was no evidence to support the negligence finding. Appellants ask us to render judgment against Neely's, in accordance with the jury verdict. They seek no relief against American.

Mrs. Castillo applied for a job in May 1986 and started work on June 2, 1986. She was interviewed by Annette Golden, Neely's bookkeeper, and Roy Crenwelge, the general manager. Golden explained the group medical plan ("the plan"). She stated that insurance would be available after Castillo had been employed for 90 days. No one told Mrs. Castillo that the plan had a 30–day "window," that from the 91st through the 120th day of employment, she could enroll without proof of good health, and after that, she would have to prove good health in order to be covered. In February 1987, Mrs. Castillo suffered shortness of breath and consulted a doctor, but her condition was not diagnosed. The problem recurred in November 1987, and she was examined by a cardiologist in December. She first applied for insurance in the plan about that time. Foreseeing difficulties in obtaining coverage, Ms. Golden and Mrs. Castillo prepared enrollment applications falsely stating that Mrs. Castillo's first day of employment was September 1, 1987. This, they thought, would cause Mrs. Castillo to be insured as of December 1.

Following a heart catheterization in January 1988, Mrs. Castillo was diagnosed as suffering from idiopathic pulmonary hypertension. This disease is fatal unless a heart and lung transplant is performed. Mrs. Castillo was hospitalized for the same condition late in January 1988, and American then discovered the false enrollment cards. American denied coverage because Mrs. Castillo had not enrolled within the 30–day window period, she had not proved good health, and her pulmonary hypertension was a pre-existing condition. This suit followed.

Neely's moved, on several grounds, for judgment notwithstanding the verdict. The trial judge granted relief solely because the jury's finding of negligence was "unsupported." He disregarded the finding[1] and entered a take-nothing judgment.

Appellants contend there was evidence of Neely's negligence and that the trial court should have submitted questions concerning Neely's breach of contract and punitive damages. Neely's contends the trial court had no jurisdiction because appellants' claims were preempted by the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1001–1461 (1984).

Appellants claimed breach of contract, negligence, fraud, deceptive trade practices, violations of Tex.Ins.Code Ann. art. 21.-21 (Vernon Supp.1989), and breach of the covenant of good faith and fair dealing. The jury found for appellants on the negligence claim only. Appellants sought no relief under ERISA, none under any insurance policy, and none under any employee benefit plan.

Only American pleaded the ERISA defense. Neely's raised the ERISA defense in its objections to the jury charge and in its motion for judgment notwithstanding the verdict. At trial, American's vice-president for claims, George Ham, testified, outside the jury's presence only, that the group insurance policy available to Neely's employees was a plan governed by ERISA. His testimony was positive, uncontradicted,

and unimpeached. Neither side submitted evidence to the jury concerning ERISA.

We note that the trial judge did not grant the judgment notwithstanding the verdict because of preemption. Ordinarily, this would make it unnecessary for us to decide whether appellants' claims were preempted. Neely's contends, however, that the issue of preemption is jurisdictional, and cannot be waived, citing *Gorman v. Life Ins. Co. of North America*, 752 S.W.2d 710, 713 (Tex.App.—Houston [1st Dist.] 1988, writ denied), and *Cathey v. Metropolitan Life Ins. Co.*, 764 S.W.2d 286, 292 (Tex.App.—Houston [1st Dist.] 1988, writ pending). We disagree.

■■■ A claim of ERISA preemption is a federal defense to appellants' negligence claim. *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 107 S.Ct. 1542, 1546, 95 L.Ed.2d 55 (1987). "[T]he existence of an ERISA plan is a question of fact," *Donovan v. Dillingham*, 688 F.2d 1367, 1373 n. 11 (11th Cir.1982) (en banc), and "the burden is on the defendant to prove the facts necessary to establish it." *Kanne v. Connecticut General Life Ins. Co.*, 859 F.2d 96, 98–99 n. 4 (9th Cir.1988). The existence of a federal preemption defense does not always affect jurisdiction. *See Franchise Tax Board v. Construction Laborers' Vacation Trust*, 463 U.S. 1, 13–14, 103 S.Ct. 2841, 2848, 77 L.Ed.2d 420 (1983). A preemption argument that affects the choice of *forum*, rather than the choice of law, cannot be waived; thus, it can be raised for the first time on appeal. *International Longshoremens' Ass'n v. Davis*, 476 U.S. 380, 106 S.Ct. 1904, 1912–13, 90 L.Ed.2d 389 (1986). Four dissenting justices in *Davis* would have held that even preemption affecting the choice of forum can be waived. 106 S.Ct. at 1916, 1918. The non-waiver rule, they declared, "defies common sense" because it allows "a sophisticated defendant ... to gamble on obtaining a favorable verdict and raise a preemption defense only if it loses on the merits." *Id.*

---

1. The disregarded finding was: "Whose negligence, if any, was the proximate cause of Janie Castillo not being covered by hospitalization and major medical insurance?" Answer: "Neely's."

Neely's here asserts choice of law preemption under ERISA, not choice of forum preemption. Its claim is that no relief can be granted in any forum on the Castillos' negligence claim, not that the claim was presented in the wrong forum.

Several federal courts have held that ERISA choice of law preemption is waived if not timely asserted as an affirmative defense. *In Matter of HECI Exploration Co.*, 862 F.2d 513, 518–22 (5th Cir.1988); *Dueringer v. General American Life Ins. Co.*, 842 F.2d 127, 129–30 (5th Cir.1988); *Gilchrist v. Jim Slemons Export, Inc.*, 803 F.2d 1488, 1496–97 (9th Cir.1986); *see also Johnson v. Armored Transport of California, Inc.*, 813 F.2d 1041, 1043–44 (9th Cir.1987) (preemption waived under Labor Management Relations Act, 29 U.S.C. § 185 (1947)). In *Dueringer* and in *Gilchrist*, preemption was not asserted as an affirmative defense in the district court. In *HECI*, preemption was not raised in the bankruptcy court, and was raised for the first time, *sua sponte*, by the federal district court judge acting as an appellate court to review the decision of the bankruptcy judge. In *Johnson*, the defense was raised for the first time in post-trial motions, 813 F.2d at 1043.

Here, Neely's did not plead the ERISA defense nor did it adopt the ERISA defense pleaded by its co-defendant, American. Neely's offered no evidence at trial regarding ERISA; only American did. No party offered evidence before the jury on ERISA. Neely's did not tender, the trial court did not submit, and the jury did not answer questions regarding ERISA. There was no agreement to try the ERISA issue to the court, while leaving other issues to the jury. The court was not asked to make, and did not make, any findings regarding ERISA. Although Neely's raised the ERISA defense in its post-trial motion to dismiss and for judgment n.o.v., the trial court heard no evidence then and made no findings regarding ERISA. The trial court did not grant Neely's motion to dismiss for lack of jurisdiction due to ERISA. Rather, it disregarded the jury's finding that Neely's was negligent.

Neely's objected to the submission of appellants' damages issues, arguing "that those elements of damages are not recoverable as a result of the ERISA Act applying...." The quoted words were the only ones spoken then regarding ERISA and were said after presentation of evidence was over.

In short, the record shows no reliance by Neely's on the ERISA defense at any time before trial or during the presentation of evidence. The direct evidence concerning ERISA's application to this case consisted of one question by American's counsel to American's witness, and this was offered "to the court, not the jury" by American's counsel, after the court sustained Castillo's objection to such evidence being heard before the jury.

It is true, as Neely's contends, that this Court stated in both *Gorman* and *Cathey* that ERISA preemption cannot be waived. Neither case cited conflicting federal authority, such as *Dueringer*, which was decided less than two months before *Gorman*, or *HECI*, which was decided after *Gorman* and only nine days before *Cathey*.

*Gorman* and *Cathey* relied on the same two decisions, *International Longshoremens' Ass'n v. Davis*, 106 S.Ct. 1904, and *Barry v. Dymo Graphic Sys., Inc.*, 394 Mass. 830, 478 N.E.2d 707 (1985). *Davis* construed the Labor Management Relations Act, not ERISA, and established the distinction between non-waivable choice of forum preemption, like that under the Labor Management Relations Act, and waivable choice of law preemption, like that asserted here under ERISA. This distinction in *Davis* was relied on by federal appellate courts in *Dueringer, Gilchrist*, and *HECI* as the basis for holding that ERISA choice of law preemption can be waived. From this, we conclude that contrary statements in *Gorman* and *Cathey* were too broad. Moreover, the language in *Gorman* and *Cathey* that ERISA choice of law preemption cannot be waived was clearly dictum unnecessary to the holdings of those cases. Both opinions showed that the ERISA defense was timely, specifically, and constantly raised in those cases. The *Gorman*

defendants "maintained (the defense) throughout the proceedings" and "repeatedly asserted ERISA preemption" before, during, and after the trial. 752 S.W.2d at 713. The *Cathey* defendants not only pled the defense, they convinced the trial court to grant a summary judgment based upon it. 764 S.W.2d at 289, 292. These actions are the antithesis of waiver, and we conclude that the language regarding waiver in those cases should not control the disposition of this matter. *Accord Great North American Stationers, Inc. v. Ball,* 770 S.W.2d 631 (Tex.App.—Dallas 1989, writ pending).

In both state and federal courts, even affirmative defenses that affect vital public interests may be waived. Tex.R.Civ.P. 94 (illegality, res judicata, discharge in bankruptcy); Fed.R.Civ.P. 8(c) (same). ERISA should be treated the same.

We hold ERISA choice of law preemption was an avoidance or affirmative defense that Neely's waived.

Appellee's second cross-point of error is overruled.

■ In point of error one, appellants contend that the court erred in granting Neely's judgment notwithstanding the verdict because "a cause of action exists," and evidence supported the jury's answer to question number one. Question one asked, "Whose negligence, if any, was the proximate cause of Janie Castillo not being covered by hospitalization and major medical insurance?" The jury answered that Neely's negligence was the proximate cause and Janie Castillo's negligence, if any, was not.[2]

The standard for reviewing a judgment notwithstanding the verdict is that of no evidence. *Exxon Corp. v. Quinn,* 726 S.W.2d 17, 19 (Tex.1987). We review the evidence and all inferences from it in the light most favorable to the jury's verdict and disregard all evidence and inferences to the contrary. *Navarette v. Temple Indep. School Dist.,* 706 S.W.2d 308, 309 (Tex.1986).

In May 1986, Mrs. Castillo interviewed with Ms. Golden and Mr. Crenwelge of Neely's. Both stated that insurance was available after 90 days of employment. No one ever told Mrs. Castillo that the policy had a 30–day "window" from the 91st to the 120th day, during which she could enroll without proving good health. Golden, Crenwelge, and Larry Neely, the president of Neely's, testified they did not know of the window period, and appellants do not contend they did. No one told Mrs. Castillo that proof of good health was (or was not) required at any particular time. Mrs. Castillo was then in good health.

No one told Mrs. Castillo she would be automatically covered after 90 days or that Neely's would pay her premiums. Neely's never promised to obtain coverage for Mrs. Castillo or to complete her application.

Mrs. Castillo first suffered breathing difficulties in February of 1987, but no serious illness was diagnosed then by her doctor. She asked about buying insurance for her husband and son under Neely's plan in August of 1987, but Golden told her they could not be covered under the plan. Golden also told Mrs. Castillo that she was not covered. Mrs. Castillo subsequently purchased insurance for her son, but not for herself. Breathing difficulty recurred in November 1987. In December 1987, a cardiologist examined Mrs. Castillo. He conducted a heart catheterization in January 1988, which resulted in a diagnosis of pulmonary hypertension. Ms. Golden, who was Mrs. Castillo's closest friend at work, submitted an application to American in December 1987 falsely stating that Mrs. Castillo began her employment on September 1, 1987. Mrs. Castillo expected the insurance thus applied for to be effective December 1, 1987.

Until she applied for coverage with American, Mrs. Castillo listed herself as the person responsible to pay her medical bills. She did this as late as December 8, 1987, more than 18 months after she started at Neely's. During this time, Mrs. Cas-

---

**2.** Consistent with its answer to question number one, the jury answered question number two that Neely's negligence was 100% responsible for the lack of insurance coverage.

tillo was personally paying for medical care relating to her health problem.

Appellants rely on the Restatement (Second) of Torts § 551 (1977), which provides:

(2) One party to a business transaction is under a duty to exercise reasonable care to disclose to the other before the transaction is consummated,

(a) matters known to him that the other is entitled to know because of a fiduciary or other similar relation of trust and confidence between them; and

\* \* \* \* \* \*

(e) facts basic to the transaction, if he knows that the other is about to enter it under a mistake as to them, and that the other, because of the relationship between them, the customs of the trade, or other objective circumstances, would reasonably expect a disclosure of those facts.

Appellants also rely on Restatement (Second) of Torts § 551 comment c, which provides:

A person under the duty stated in this Subsection is required to disclose only those matters that he has reason to know will be regarded by the other as important in determining his course of action in the transaction at hand. He is, therefore, under no duty to disclose matters that the ordinary man would regard as unimportant unless he knows of some peculiarity of the other that is likely to lead him to attach importance to matters that are usually regarded as of no moment.

Appellants cite *Fox v. Dallas Hotel Co.*, 111 Tex. 461, 240 S.W. 517 (1922), *Colonial Sav. Ass'n v. Taylor*, 544 S.W.2d 116 (Tex. 1976), and *Otis Eng'g Corp. v. Clark*, 668 S.W.2d 307 (Tex.1983), for the proposition that one who voluntarily enters an affirmative course of action affecting another's interest assumes a duty to act and must do so with reasonable care.

Appellants finally rely on Restatement (Second) of Torts § 323 (1965), which provides:

One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as *nec-*

*essary* for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if (a) his failure to exercise such care increases the risk of such harm, or (b) the harm is suffered because of the other's reliance upon the undertaking.

(Emphasis added.)

Appellants assert that Neely's, having made insurance coverage available, had the duty to give Mrs. Castillo accurate information regarding the "window," and to warn her that proof of good health would be required later. They claim that, instead, Neely's provided inaccurate and misleading information and should therefore be liable.

Concerning Restatement § 551, we find no evidence, as that section requires, that Neely's knew of the undisclosed window period, or that a fiduciary relation existed when its agents talked to Mrs. Castillo. All witnesses on this subject, Larry Neely, Annette Golden, and Roy Crenwelge, testified they did not know the significance of the window period. Although the jury could disbelieve this testimony, disbelief is no evidence of actual knowledge. *R.T. Herrin Petroleum Transp. Co. v. Proctor*, 161 Tex. 222, 338 S.W.2d 422, 427 (1960) (testimony from an interested witness, though disregarded by the jury, is not evidence that the exact opposite is true); *Texas & N.O. R. Co. v. Glass*, 144 Tex. 71, 188 S.W.2d 378, 380 (1945). Moreover, the conversations on which Mrs. Castillo relies occurred before an employment or any other special relationship began. *Compare Tyra v. Woodson*, 495 S.W.2d 211, 213 (Tex.1973) (instructed verdict is proper, absent proof of any prior and separate fiduciary relationship); *Consolidated Gas Equip. Co. v. Thompson*, 405 S.W.2d 333, 336–37 (Tex. 1966) ("[F]or a constructive trust to arise, there must be a fiduciary relationship before, and apart from the agreement made the basis of the suit.").

Nor does the evidence fall within comment c to Restatement 2d § 551. Nothing shows Neely's should have known Mrs. Castillo would consider the window provi-

sion important or that there was some peculiarity about her, such as ill health, to alert Neely's of the provision's importance. No evidence shows that Mrs. Castillo's illness was then known to her or to Neely's.

Regarding Restatement 2d § 323, we find no evidence that Neely's should have known Mrs. Castillo needed insurance. No evidence shows Neely's knew Mrs. Castillo was not already insured.

The cases relied on by appellants are distinguishable. In *Montgomery Ward & Co. v. Scharrenbeck*, 146 Tex. 153, 204 S.W.2d 508 (1947), the defendant made faulty repairs to a heater, causing a fire. In imposing liability, the court noted that the defendant had undertaken, as an expert and for consideration, to repair and adjust the heater. *Id.* 204 S.W.2d at 511. We find no evidence that Neely's acted as an expert or for consideration. In *Colonial Sav. Ass'n. v. Taylor*, 544 S.W.2d at 116, the defendant failed to buy insurance after agreeing to do so. No evidence before us indicates that Neely's told Mrs. Castillo she would be insured or that Neely's would pay for it. Finally, in *Otis Eng'g Corp. v. Clark*, 668 S.W.2d at 307, the defendants placed an obviously drunk employee in a car and ordered him to leave, thus creating a serious, specific, and immediate danger. Here, Neely's did not know that Mrs. Castillo was sick or uninsured.

Finally, we find no evidence that Neely's acts were the actual and foreseeable, i.e., the proximate cause of Mrs. Castillo not being insured. During all the relevant times, Mrs. Castillo paid her own medical bills. She bought insurance for her son, but not for herself, after Golden told her she was not covered. She listed herself as the one obligated to pay for her medical care. We find no evidence that Mrs. Castillo's failure to buy insurance was the foreseeable result of Neely's failure to mention the window period. Finally, although Mrs. Castillo testified she could have afforded insurance 90 days after beginning employment, appellants point to no evidence that she would have purchased it then if she had known of the window period.

Mrs. Castillo's complaint seems to be that because Neely's told her she could have insurance after 90 days, she thought she could wait until illness struck and then, without proving good health, buy insurance that would cover her pre-existing illness. Neely's never told her this. The law should not protect such an expectation, based only on the statement that insurance was available. We hold that Neely's had no duty to foresee or to correct such a misimpression, having done no more than it did to create it.

Appellants' point of error one is overruled.

Appellants' point of error three asserts that the trial court erred in failing to enter judgment on the jury's verdict in favor of Mr. Castillo. His claims are derivative of Mrs. Castillo's claims. Consequently, we overrule point of error three.

In point of error two, appellants contend that the trial court erred in refusing to submit their jury questions concerning punitive damages and breach of contract. We disagree.

■ Punitive damages cannot be recovered for breach of contract, *Amoco Prod. Co. v. Alexander*, 622 S.W.2d 563 (Tex. 1981), and cannot be awarded without a jury finding of gross negligence. We have held there was no evidence of negligence.

We also find no error in refusing to submit the contract issues. Neely's told Mrs. Castillo only that she could get insurance after 90 days. It never told her that after becoming ill, she could buy insurance to cover her pre-existing illness. Thus, there is no evidence of an express contract. For reasons stated above, we find no evidence this was an implied additional term in this oral employment contract.

Point of error two is overruled.

In light of our holdings, we need not reach appellee's first cross-point of error, asserting that the evidence supporting the negligence finding is contrary to the great weight and preponderance of the evidence.

The judgment is affirmed.