**PAN AMERICAN LIFE INSURANCE COMPANY, Appellant,**

v.

**ERBAUER CONSTRUCTION CORPORATION, Appellee.**

No. 01–87–00394–CV.

Court of Appeals of Texas, Houston (1st Dist.).

April 5, 1990.

Rehearing Denied June 7, 1990.

⌐Roger Townsend, Patricia Kerrigan and Jennifer L. Bruch, Houston, for appellant.

Wayne Fischer and Don Wetzel, Houston, for appellee.

Before COHEN, DUGGAN and DUNN, JJ.

## ON MOTION FOR REHEARING

COHEN, Justice.

Appellant's motion for rehearing is granted, our opinion of December 29, 1988, is withdrawn, and the following is substituted.

This is an appeal from a judgment for damages to an employer because of an insurer's wrongful denial of an employee's group health insurance claim. Appellee, Erbauer Construction Corporation. ("Erbauer"), sued Pan American Life Insurance

Co. ("Pan Am"), alleging bad faith settlement practices and violations of the Deceptive Trade Practices Act ("DTPA") and the Insurance Code. After a nonjury trial, the court awarded $1.2 million actual damages, plus $2.4 million in additional damages under the Insurance Code and the DTPA, plus attorney's fees, and prejudgment interest, totaling $4,699,230.25.

Crystal Gill, the two-year-old daughter of an Erbauer employee, Dewey Gill, was injured in a mobile home fire on December 22, 1979. She suffered burns and smoke inhalation that caused brain damage, rendering her a blind, spastic quadriplegic. She was treated at Herman Hospital and at the Shriner's Burn Center in Galveston before being transferred to a state institution in Louisiana, following Pan Am's denial of her claim under Erbauer's group insurance policy. Hermann Hospital had earlier contacted both parties to determine whether the child was covered under her father's insurance policy and was told by both that she was. However, Pan Am later denied the claim, and in November 1981, Hermann Hospital sued both Erbauer and Pan Am for Crystal Gill's hospital bills. Erbauer filed this cross-claim against its co-defendant, Pan Am. The Gills intervened in the suit in January 1982, and discovery occurred over the next five years.

Immediately before trial, on December 3, 1986, Hermann Hospital settled with both Erbauer and Pan Am, and the remaining claims were tried on December 29, 1986. The Gills settled with Pan Am during trial, and trial continued on Erbauer's cross-claim against Pan Am for damages to its business due to Pan Am's wrongful denial of Dewey Gill's claim for medical benefits. At trial, Erbauer showed that the market in Houston in the early 1980's for skilled, nonunion construction employees was very competitive. Erbauer showed that as a result of the denial of Gill's claim, rumors arose that it was not providing adequate benefits to its workers, and because of these rumors, Erbauer could no longer attract quality employees. Consequently, Erbauer's reputation declined, its bids for in-

dustrial projects were not accepted, and ultimately, it was sold for less than it would have been worth if Pan Am had not wrongfully denied Gill's claim.

■ In its first point of error, Pan Am contends the trial court lacked subject matter jurisdiction because state law is preempted by the Employee Retirement Income Security Act of 1974 ("ERISA").[1] Pan Am relies on 29 U.S.C.S. § 1144(a) (1982), which provides:

> The provisions of this title and title IV shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 4(a) and not exempt under section 4(b)....

In *Castillo v. Neely's TBA Dealer Supply, Inc.*, 776 S.W.2d 290 (Tex.App.—Houston [1st Dist.] 1989, writ denied), we held that ERISA's preemption provision was an affirmative defense that could be, and was, waived by a defendant who did not plead the defense and did not offer evidence or obtain findings in the trial court regarding the defense. *Id.* at 292–94. Pan Am did less here to raise the defense than the defendant did in *Castillo*. Pan Am raised the ERISA defense for the first time in this Court. We adhere to our holding in *Castillo* and hold that the preemption defense was waived. *Accord Great North American Stationers v. Ball*, 770 S.W.2d 631 (Tex.App.—Dallas 1989, writ dism'd).

Pan Am's first point of error is overruled.

■ In its second point of error, Pan Am contends:

> The trial court's judgment should be reversed because [Erbauer's] claims against Pan Am are barred by the applicable statutes of limitations.

This judgment arose from a cross-claim filed in Hermann Hospital's original suit against both parties. Erbauer timely filed its cross-claim in 1981, within the limitations period, but it never served Pan Am until it filed its amended cross-claim on December 2, 1986. This was more than

---

1. 29 U.S.C.S. §§ 1001 et seq. (1982).

five years after Pan Am had denied Gill's claim on April 11, 1981. Pan Am contends that because service, not mere filing, is necessary to toll the statute of limitations, Erbauer's failure to obtain service allowed both the two-year and the four-year limitations periods to expire before December 1986.

Immediately before trial, the court held a hearing on Pan Am's motion to dismiss due to limitations. There was no testimony at the hearing, only argument of counsel. Pan Am's attorney stated that Pan Am had not been served with citation and had not received a copy of the cross-claim, but admitted that Erbauer had asked that Pan Am be served. Erbauer's lawyer responded, "We do not know whether the Commissioner of Insurance effected service ... or not. We know that we sought issuance of it. We know that we paid our fifteen dollar filing fee, not once, but twice." The trial court orally overruled the motion to dismiss.

We construe Pan Am's point of error as a complaint that the trial judge erroneously overruled its pretrial motion to dismiss. We have found no other place in the record where Pan Am's trial counsel requested relief based on limitations.

Texas courts have held that service of citation is not required when one defendant files a cross-claim against another defendant. *Early v. Cornelius*, 120 Tex. 335, 39 S.W.2d 6, 8 (1931); *Empire Gas and Fuel Co. v. Noble*, 36 S.W.2d 451, 454 (Tex. Comm'n App.1931, judgm't adopted); *Sullivan v. Doyle*, 108 Tex. 368, 194 S.W. 136, 137 (1917); *Carter v. G & L Tool Co. of Utah, Inc.* 428 S.W.2d 677, 681 (Tex.Civ. App.—San Antonio 1968, no writ); *Galloway v. Moeser*, 82 S.W.2d 1067, 1069 (Tex. Civ.App.—Eastland 1935, no writ); 2 R. McDonald, *Texas Civil Practice in District and County Courts* § 7.56 (rev.1982). If a cross-defendant is not entitled to notice of the cross-claim, the failure to notify it cannot give rise to a valid defense of limita-

tions. In such cases, the cross-defendant's general appearance "brings him before the court for all purposes and charges him with notice of the cross-claim, whether it be filed before or after his appearance in answer to the plaintiff's demand." 2 R. McDonald at 275. Pan Am's authorities are distinguishable because none involves a cross-claim against a co-defendant.

Finally, we note that although Pan Am presented evidence at trial regarding limitations, it did not ask for any relief on that basis after the court overruled its pretrial motion. We have not been directed to any post-trial brief, motion for judgment, motion for new trial, request for findings of fact and conclusions of law, or other post-trial request for relief based on limitations. We have reviewed the trial court's oral order overruling Pan Am's pretrial motion to dismiss because Pan Am obtained an adverse ruling, and because Erbauer has not contended that the limitations defense was waived. We decline, however, to consider any evidence from the trial concerning the limitations defense because Pan Am did not ask for any relief during or after the trial based on limitations. The record, therefore, must stand as it did at the time of the pretrial motion. Pan Am's failure to request findings of fact or conclusions of law concerning the affirmative defense of limitations, on which it had the burden of proof, precludes review of the record made after the pretrial hearing.[2] *See MBank Abilene, N.A. v. Westwood Energy, Inc.*, 723 S.W.2d 246, 252 (Tex.Civ. App.—Eastland 1986, no writ); *Pinnacle Homes Inc. v. R.C.L. Offshore Eng'g Co.*, 640 S.W.2d 629, 631 (Tex.App.—Houston [14th Dist.] 1982, writ ref'd n.r.e.); TEX.R. CIV.P. 299.

Pan Am's second point of error is overruled.

 In its third point of error, Pan Am argues that the trial court abused its discretion for failing to strike the unserved

---

2. On appeal, Pan Am cites only the trial testimony of *Erbauer's* lawyer to support its limitations defense. No witness testified that Pan Am was not served with citation and did not receive the cross-claim pursuant to TEX.R.CIV.P. 21a. No

witness testified that Pan Am did not have actual notice of the claim. The trial found there was "unconvincing and insufficient evidence" that Pan Am was unaware of the cross-claim.

cross-claim. Pan Am relies on Tex.R.Civ.P. 73, which allows sanctions for not delivering pleadings to adverse parties in accordance with Tex.R.Civ.P. 72. However, the rule is not mandatory; it states that the "court *may in its discretion* ... order ... such pleading stricken...." Tex.R.Civ.P. 73 (emphasis added).

The purpose of Rule 72 is to prevent surprise. Here, the trial court made the following supplemental finding of fact concerning the issue of surprise to Pan Am:

> There was unconvincing and insufficient evidence to establish that Pan American Life Insurance Company or its counsel were not aware of and did not have actual evidence of the original answer and cross-claim filed by Erbauer Construction Corporation as cross-plaintiff against Pan American Life Insurance Company as cross-defendant.

This finding of fact has not been attacked on appeal. Moreover, the trial court refused to make a finding of fact requested by Pan Am that it had no actual knowledge of Erbauer's cross-claim before December 2, 1986.

A trial court abuses its discretion if it acts without reference to any guiding rules and principles in an arbitrary or unreasonable manner. *Downer v. Aquamarine Operators, Inc.* 701 S.W.2d 238, 241–42 (Tex. 1985), *cert. denied,* 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986). The mere fact that a trial court may decide a matter within its discretionary authority differently from what an appellate court would decide in a similar circumstances is not an abuse of discretion. *Id.* Here, Pan Am was served with the cross-claim more than three weeks before trial. On the day set for trial, it announced ready and did not request a continuance until the final day of trial. The burden of proof is on the complaining party to show an abuse of discretion. *Hardin v. Hardin,* 597 S.W.2d 347, 349–50 (Tex.1980). Pan Am has not met this burden.

Pan Am's third point of error is overruled.

 In its fourth point of error, Pan Am complains that the trial court erred by denying its motion for new trial based upon newly discovered evidence. To obtain a new trial based on newly discovered evidence, a party must show the trial court that: 1) the evidence has come to light since trial; 2) it is not due to lack of diligence that it was not produced sooner; 3) the new evidence is not cumulative; and 4) the new evidence is so material that it would have probably produced a different result if a new trial were granted. *Jackson v. Van Winkle,* 660 S.W.2d 807, 809 (Tex.1983). The standard of review we must apply to the denial of a motion for new trial is whether the judge abused her discretion. *Id.*

In its motion, Pan Am contended its newly discovered evidence, affidavits from former employees of Erbauer discussing other possible causes of the company's economic difficulties, was discovered by its investigator hired *following* trial. Pan Am did not take any action to delay the start of trial or request a continuance *prior to trial* to pursue further discovery. As stated above, Pan Am filed its motion for continuance on the *last day of trial.* Pan Am has failed to establish that it used due diligence in attempting to discover the new evidence. *Id.* Further, these affidavits are properly characterized as rebuttal or impeachment testimony of Erbauer's evidence regarding damages. Pan Am has not met its burden that this evidence would have produced a different result if a new trial were granted. Finally, we note, again, the trial court's finding that Pan Am did not prove its unawareness of the cross-claim. Every reasonable presumption should be made on review in favor of orders of the trial court refusing new trials. *Id.* We find no abuse of discretion.

Pan Am's fourth point of error is overruled.

In its fifth, seventh, ninth, and tenth points of error, Pan Am argues that there is no evidence, or that there is factually insufficient evidence, to support the trial court's findings of fact.

 The standard of review for a factual insufficiency challenge requires this

Court to examine and weigh all of the evidence, *Lofton v. Texas Brine Corp.*, 720 S.W.2d 804, 805 (Tex.1986), and to set aside the findings of fact only if they are so contrary to the overwhelming weight of the evidence that they are clearly wrong and unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986). In considering a "no evidence" challenge, this Court must consider only the evidence and reasonable inferences drawn from the evidence that, when viewed in their most favorable light, support the jury verdict or trial court finding. *Texaco, Inc. v. Pennzoil Co.*, 729 S.W.2d 768, 787 (Tex.App.—Houston [1st Dist.] 1987, writ ref'd n.r.e.). This Court must disregard all evidence and inferences to the contrary. *Id.* If there is more than a scintilla of evidence to support the finding, the no evidence challenge cannot be sustained. *Stafford v. Stafford*, 726 S.W.2d 14, 16 (Tex.1987). When the evidence offered to prove a vital fact is so weak as to do no more than create a mere surmise or suspicion of its existence, the evidence is no more than a scintilla, and, in legal effect, no evidence. *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex.1983).

■ Pan Am's fifth point of error addresses the findings of fact relating to causation, foreseeability, and the amount of the actual damages incurred by Erbauer. Pan Am also challenges the trial court's sixteenth finding of fact, that denial of the Gills' claim caused direct and foreseeable harm to Pan Am. Erbauer's expert testified, when questioned by the trial court, that improper denial of a claim for medical benefits could cause substantial problems for a construction firm seeking to retain a skilled and productive work force. Further, this same expert testified as to the keen competition and marketing necessary to remain on the bidding lists of the large industrial clients along the ship channel, particularly during the boom years in the late 1970's and early 1980's. This same testimony also supports findings of fact numbers 24, 25, 26, and 39, that relate to causation and foreseeability. Pan Am had experience in writing group construction insurance plans, and its manager of group claims acknowledged that wrongful denial

of a claim would affect not only the employee, but the employer. Pan Am was aware that denial of a claim would have ramifications beyond the individual employee and could affect the reputation and business credibility of Erbauer.

■ Pan Am argues that the award of $1,200,000 in actual damages is not supported by the evidence. In *Southwest Battery Corp. v. Owen*, 131 Tex. 423, 115 S.W.2d 1097, 1098–99 (1938), the court stated the proper measure of damages as follows:

> In order that a recovery may be had on account of lost profits, the amount of the loss must be shown by competent evidence with reasonable certainty. Where the business is shown to have been already established and making a profit at the time when the contract was breached or the tort committed, such pre-existing profit, together with any facts and circumstances, may indicate with reasonable certainty the amount of profits lost. It is permissible to show the amount of business done by the plaintiff in a corresponding period of time not too remote, and the business during the time for which recovery is sought.

*Id.*

Erbauer's evidence consisted of testimony by officers of the company and a competitor that had received a contract, which he testified was initially intended for Erbauer. The president of Erbauer, Dr. Charles Walker, also testified as an expert concerning business evaluation and loss of future profits.

Q: How valuable is that relationship that Erbauer had with its employees, and with established and major industrial clients, to outsiders who might want to enter the marketplace?

A: It would be the only thing of real value.

Q: All right [sic] sir. If you—well, do you have an opinion, Dr. Walker, and if Erbauer had maintained its present goodwill, and if the events that we have heard here in this courtroom, which occurred after April 11th, of 1980, had not oc-

curred, what Erbauer would have been able to sale [sic] its goodwill and its operating assets for?

A: A minimum of three million dollars.

Q: Okay. And, how did you arrive at that, sir?

A: I took six times the five hundred thousand dollars, and I got three million dollars.

Q: Why did you use the multiple of six times the earnings?

A: I was being very conservative.

Q: All right [sic], sir. Now, excuse me. When you say "five hundred thousand," is that five hundred thousand the earnings and the profits of the corporation?

A: Yes, sir, for the fiscal year ending September 30th, of 1980.

Q: All right [sic]. What, in fact, did Erbauer sell its operating assets that it had acquired through these four, five or six years of business, what did it sell its operating assets for?

A: The sale price was one million one hundred and fifty-seven thousand and five hundred dollars.

Q: All right [sic]. And, if I subtract three million—excuse me—if I subtract [sic] one million one hundred and fifty-seven thousand and five hundred dollars from three million, and if I do the substraction [sic], I get one million eight hundred and forty-two thousand and five hundred dollars. Now, assuming that my substraction [sic] is correct, Dr. Walker, do you have an opinion as to the damage to Erbauer's good will caused by the act of Pan American Life Insurance Company?

A: Yes, sir.

Q: And, what is that opinion?

A: A million and eight, and based solely on this one item.

The witness then proceeded to prepare a chart on the court's blackboard summarizing the alleged damages. Although this chart was accepted into evidence as plaintiff's exhibit 10, it is not before this Court. However, the alleged increased expenses, lost profits, and damage to goodwill resulting from the denial of the claim can be reconstructed from the testimony of the witness and follows below:

Additional cost of interest—$67,500

Cost of additional CPA reviews—$35,000

Lost profits from ITC contract—$190,000

Lost profits from Exxon contract—$400,000

Lost profits from Haldeman contract—$300,000

Damage to goodwill of Erbauer—$1,800,000

Total damages alleged by Erbauer—$2,792,500

Erbauer was required to provide the court with evidence sufficient to provide a reasonable basis to estimate the loss and assess damages. *Gulf Coast Inv. Corp. v. Rothman*, 506 S.W.2d 856, 858 (Tex.1974). The trial court awarded Erbauer less than half of the damages it alleged. The evidence in the record is sufficient to find causation and damages.

Pan Am's fifth point of error is overruled.

██ Pan Am's seventh point of error challenges the findings concerning Pan Am's failure to properly process and pay Erbauer's claim on behalf of the policy beneficiary, Crystal Gill, and of Pan Am's handling of the claim in bad faith. The testimony of the beneficiary, Dewey Gill, of Erbauer's personnel manager, Ms. Louise Harshman, and of Pan Am's claims manager support the findings. Mr. Gill testified that he wanted insurance coverage for his dependents, and that he completed the necessary form at Erbauer's personnel office. Pan Am's claims manager testified that a participant was covered by the policy retroactively from the time he requested the coverage. Ms. Louise Harshman Hubbard, personnel manager for Erbauer, testified that she telephoned Mark Foster, Erbauer's contact with Pan Am, both before and after the fire concerning coverage for the Gill family. She testified that at both times, Foster confirmed the Gill family had medical benefits. Pan Am's claims office paid the initial medical bills sent by Erbauer, but later denied liability and refused to pay any further claims. Further, Pan Am presented no evidence that it conducted

any investigation before or after denying the claim. We hold the evidence was sufficient.

Pan Am's seventh point of error is overruled.

In its ninth and tenth points of error, Pan Am attacks the evidence supporting the trial court's findings of: 1) its misrepresentations to Erbauer; 2) certain acts proscribed by art. 21.21 [3] of the Insurance Code; and 3) violations of the DTPA. TEX.BUS. & COM.CODE ANN. § 17.41 et seq. (Vernon 1987). Testimony from both the officers at Erbauer who purchased the policy and from Mark Foster and James Iiams, agents of Pan Am, recounted the discussions surrounding the purchase of the policy. Pan Am knew Erbauer's needs and represented that the policy would meet them. The policy included an "inadvertent error" clause that provided for coverage even if Erbauer made a clerical mistake in processing an enrollee. Sufficient evidence was presented to the court, as trier of fact, to support findings of fact holding that Pan Am knowingly misrepresented the coverage and services it would provide under the policy.

Points of error nine and ten are overruled.

In its eleventh point of error, Pan Am makes no evidence challenge to the findings of fact regarding express representations by Pan Am's agent, Mark Foster, on December 20 and 27, 1979, to Erbauer that Dewey Gill and his dependents had medical coverage benefits under Erbauer's insurance policy. The record reflects that Ms. Hubbard testified that she called Foster on December 20 and 27 to discuss the Gills' insurance. Although Foster testified that he did not receive the calls, the trier of fact is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *Rego v. Brannon*, 682 S.W.2d 677, 680 (Tex.App. —Houston [14th Dist.] 1984, writ ref'd n.r. e.). The trial court was presented with evidence that Foster made the representa-

tions attributed to him in the findings of fact.

Pan Am's eleventh point of error is overruled.

In its sixth point of error, Pan Am complains that the trial court committed reversible error in overruling its motion for continuance on the final day of trial. The granting or denial of a motion for continuance is within the sound discretion of the trial court and will not be disturbed unless the record discloses a clear abuse of discretion. *Villegas v. Carter*, 711 S.W.2d 624, 626 (Tex.1986). In its brief, Pan Am cites *Peterson v. Clay*, 225 S.W. 1112, 1115 (Tex. Civ.App.—Amarillo 1920, no writ); however, this case addresses the proper standard to be applied to a motion for a continuance, e.g., to demonstrate due diligence when new evidence comes to light *during* trial. There is no evidence before this Court that Pan Am attempted any discovery during the intervening period between the time when the case was reset on December 3 and the start of trial on December 29, 1986. Pan Am's motion for continuance came on the last day of trial, after Pan Am had announced "ready for trial" on both December 3 and 29. Pan Am does not address in its brief how the trial court's refusal to grant its motion for continuance rose to the level of an abuse of discretion. Again, we note the trial court's finding that Pan Am did not prove it was unaware of Erbauer's claim. We do not find that the trial court abused its discretion in declining to grant this motion at the close of trial.

Pan Am's sixth point of error is overruled.

In its eighth point of error, Pan Am argues that the judgment of the trial court must be reversed because the evidence is insufficient to support the omitted finding that Pan Am's bad faith in settling the claim was the proximate cause of Erbauer's damages. Under TEX.R.CIV.P. 299, omitted findings of fact, where supported by the evidence, and where one or more elements of a ground of recovery have

**3.** *See* TEX.INS.CODE ANN. § 21.21 (Vernon Supp. 1990).

been found by the trial court, are to be presumed in support of the judgment. In the instant case, we have resolved the issues of sufficiency of the evidence in favor of Erbauer. Pan Am's own expert acknowledged the consequences of a rumor that a construction company was not providing promised benefits to its employees. Further, Iiams, Pan Am's group claims manager, testified that Pan Am was also aware of the ramifications of a wrongful denial of a claim. He also testified that no investigation was performed to further determine the merits of the claim once it was denied. Upon a complete examination of the record, we find sufficient evidence to support the omitted finding of causation between Pan Am's bad faith denial of the claim and Erbauer's damages.

Pan Am's eighth point of error is overruled.

The judgment of the trial court is affirmed.

DUNN, J., dissents.

DUNN, Justice, dissenting.

I respectfully dissent.

Appellant's first point of error presents several related questions for our consideration: (1) Does ERISA preempt the subject matter of Erbauer's state law claims? (2) Would Erbauer's lack of standing to sue under ERISA affect the question of preemption? (3) If ERISA does preempt the suit, does Pan American's failure to assert preemption as a defense in the trial court constitute a waiver of its ERISA contentions? and (4) If ERISA preemption applies, and was not waived, did the state court have jurisdiction to hear Erbauer's claim under ERISA or through any derivative theories?

The Employee Retirement Income Security Act was enacted by Congress as a comprehensive system to regulate employee benefit plans, "in the interests of employees and their beneficiaries, for the protection of the revenue of the United States, and to provide for the free flow of commerce." 29 U.S.C.S. § 1001(a) (1982). To further these national public interests, Con-gress designed ERISA to provide minimum standards that would assure "the equitable character" of such plans and their financial soundness. *Id.* The statute's express policies are to protect the interests of participants and beneficiaries in employee benefit plans by: (1) requiring minimum disclosure and reporting of financial information; (2) establishing standards of conduct, responsibility, and obligation for fiduciaries of those plans; and (3) providing appropriate remedies, sanctions, and ready access to the federal courts. 29 U.S.C.S. § 1001(b).

ERISA contains an extensive civil enforcement structure, by which certain enumerated plaintiffs may sue, *inter alia,* to recover benefits, to clarify and to enforce rights under their benefit plans, or to obtain information required to be furnished by ERISA. 29 U.S.C.S. § 1132(a) (1982). The statute mandates that most ERISA actions be heard exclusively in federal court, but allows concurrent jurisdiction in federal and state courts for certain specified types of claims. 29 U.S.C.S. § 1132.

### ERISA Preemption

To further the end of uniformity and comprehensive regulation, the ERISA statute also contains broad preemption provisions, which state that ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to an employee benefit plan" covered by the Act. 29 U.S.C.S. § 1144 (1982). This provision is construed broadly, and the United States Supreme Court has held that the preemptive scope of ERISA's civil enforcement provisions is "so powerful as to displace entirely any state cause of action...." *Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 107 S.Ct. 1542, 1546–47, 95 L.Ed.2d 55 (1987). Any suit relating to ERISA "is purely a creature of federal law, notwithstanding the fact that state law would provide a cause of action in the absence of [ERISA]." *Id.*

ERISA's expansive preemption section defines which state laws are superseded as: "all laws, decisions, rules, regulations, or other State action having the effect of law, of any State." 29 U.S.C.S. § 1144(c)(1).

Thus, ERISA preempts both state common law and statutory law. The definition of "state" under ERISA's preemption provision includes not only the state itself, but also any of its political subdivisions, agencies, or instrumentalities that purport to regulate employee benefit plans, directly or indirectly. 29 U.S.C.S. § 1144(c)(2). Given how broadly ERISA's preemption clause is phrased and construed, and given the extensive remedial purpose of ERISA, "state laws found to be beyond the scope of [ERISA preemption] are few." *Cefalu v. B.F. Goodrich Co.*, 871 F.2d 1290, 1294 (5th Cir.1989), quoting *Jackson v. Martin Marietta Corp.*, 805 F.2d 1498, 1499 (11th Cir.1986).

The first question for consideration is whether ERISA preempts the subject matter of Erbauer's state law claims.

ERISA's broad preemption section provides that ERISA supersedes all state laws or actions that "relate to" employee benefit plans covered by the Act. 29 U.S.C.S. § 1144. Congress intended that the language of ERISA's preemption provision be given its broadest common sense interpretation. *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987). If a state law cause of action "relates to" an ERISA benefit plan, it is preempted, even if the state law was not designed specifically to apply to employee benefit plans and may regulate them only indirectly. *Id.*

In *Pilot Life*, the Supreme Court explained that a state law or action "relates to" a benefit plan in the normal sense of the phrase, if it has a connection with or reference to such a plan. 481 U.S. at 47, 107 S.Ct. at 1552. Although the claim in *Pilot Life*, as here, was for the improper processing of a claim for benefits, the employee benefit plan was the underlying focus of the litigation, and because the state common law causes of action related to that plan, they were preempted by ERISA.

ERISA's preemption clause does not apply only to state laws dealing directly with subject matters covered by ERISA. *Shaw v. Delta Airlines, Inc.*, 463 U.S. 85, 98, 103 S.Ct. 2890, 2900, 77 L.Ed.2d 490 (1983).

Rather, ERISA's preemption of state law claims focuses on the conduct to which the law is applied. *Cefalu*, 871 F.2d at 1294, and whether the payment of ERISA benefits are the true subject of the claim.

A recent Texas Supreme Court case briefly touched on the meaning of the term "relates to" in connection with ERISA preemption. *Ames v. Ames*, 776 S.W.2d 154 (Tex.1989). In *Ames*, the court interpreted ERISA's "relates to" language in terms of the purpose of the state law or action. According to the decision in *Ames*, the ERISA preemption applies if the state action is an attempt to regulate areas explicitly governed by ERISA, instead of only indirectly relating to an ERISA plan so that the action does not conflict with ERISA's purposes. *Id.* at 157–58. Although the court in *Ames* held that ERISA did not preempt the claims asserted there for conversion of benefits, it emphasized that the ERISA benefit plan involved had terminated, so the claim no longer required any interpretation of the plan's terms or any regulation of the plan. *Id.* at 158. Thus, *Ames* is distinguishable from the typical situation in which preemption is at issue.

Following the Supreme Court's standard of broad preemption in *Pilot Life*, lower courts have held that claims such as those asserted by Erbauer here are preempted by ERISA. For example, the Fifth Circuit has held that ERISA preempts state law claims for breach of fiduciary duty, negligence, equitable estoppel, breach of contract, and fraud. *Hermann Hosp. v. MEBA Medical & Benefits Plan*, 845 F.2d 1286, 1290 (5th Cir.1988). Texas courts have held that state law claims for deceptive trade practices, violations of state insurance law, and breach of the duty of good faith and fair dealing are preempted when they are based upon the circumstances surrounding payment or nonpayment of an ERISA plan benefit. *See, e.g., Cadillac Ins. Co. v. L.P.C. Distrib. Co.*, 770 S.W.2d 892 (Tex. App.—San Antonio 1989, writ granted Oct. 18, 1989) (ERISA preempts wrongful insurance cancellation claims); *Gorman v. Life Ins. Co. of North America*, 752 S.W.2d 710

(Tex.App.—Houston [1st Dist.] 1988, writ requested) (ERISA preempts TEX.INS.CODE ANN. art. 21.21 claim); *Sams v. N.L. Indus., Inc.*, 735 S.W.2d 486 (Tex.App.— Houston [1st Dist.] 1987, no writ) (ERISA preempts breach of contract and conversion claims); *Giles v. Texas Instruments Employees Pension Plan*, 715 S.W.2d 58 (Tex. App.—Dallas 1986, writ ref'd n.r.e.) (ERISA preempts DTPA and misrepresentation claims).

In light of these authorities, I would find that the subject matter of Erbauer's cross-claim was preempted by ERISA. Erbauer sought damages for consequential injuries to its business that it claimed had occurred as a direct result of Pan American's failure to pay benefits under the ERISA plan. Thus, at the core of Erbauer's claim was the allegedly improper determination of the beneficiary's entitlement to benefits or the improper processing of the claim under the plan. Erbauer's cause of action could not be decided without judicial inquiry first into the employee's entitlement to benefits or Pan American's administration of the employee benefit plan. Clearly, such a claim "relates to" or has a connection with or reference to the employee benefit plan. *Pilot Life*, 481 U.S. at 47, 107 S.Ct. at 1552.

However, Erbauer argues that it lacks standing to sue under ERISA, which allows only beneficiaries or participants to enforce its provisions. Erbauer claims that preemption does not apply here, because if it did, Erbauer would have no remedy under federal law.

### Standing to Sue Under ERISA

ERISA provides for civil enforcement actions to be brought by a participant, a beneficiary, or a fiduciary, as defined in ERISA, or by the Secretary of Labor. 29 U.S.C.S. § 1132(a).

A "participant" includes an employee or former employee who is, or may become, eligible to receive any type of benefit from his employer's benefit plan. 29 U.S.C.S. § 1002(7) (1982). A "beneficiary" means a person designated by a participant or by the benefit plan, as entitled to a benefit under the plan. 29 U.S.C.S. § 1002(8).

The term "fiduciary" includes an administrator, officer, trustee, or custodian of the benefit plan. 29 U.S.C.S. § 1002(14). An "administrator" means a person so designated by the benefit plan, the plan sponsor, or a person chosen by the Secretary of Labor if no plan sponsor or other administrator can be identified. 29 U.S.C.S. § 1002(23).

There is a split of authority on the question of whether assignees of ERISA claims have standing to bring suit under § 1132. *Compare Northeast Dep't ILGWU Health & Welfare Fund v. Teamsters Local Union No. 229 Welfare Fund*, 764 F.2d 147, 154 n. 6 (3d Cir.1985) (assignees have no standing under ERISA) with *Misic v. Building Serv. Employees Health & Welfare Trust*, 789 F.2d 1374, 1378 n. 4 (9th Cir.1986) (assignees may sue on behalf of participants or beneficiaries). However, both of these cases involved express assignments, not the type of implied derivative standing that might arguably be implicated here by reason of the beneficiaries' (the Gills') participation in the suit. Erbauer sued in its own right for damages it sustained as the result of Pan American's mishandling of Dewey Gill's claim for benefits, and not expressly on behalf of its employee, the beneficiary.

An employer has no standing in its own right to sue under ERISA, because it is not ordinarily "a participant, beneficiary, or fiduciary," as required by 29 U.S.C.S. § 1132(a). *Giardono v. Jones*, 867 F.2d 409, 412–13 (7th Cir.1989). Most courts have restricted the right to sue under ERISA to "enumerated" parties, i.e., those listed in the statute itself. *Id.; Hermann Hosp.*, 845 at 1286; *Grand Union Co. v. Food Employers Labor Relations Ass'n*, 808 F.2d 66, 71 (D.C.Cir.1987); *Whitworth Bros. Storage Co. v. Central States*, 794 F.2d 221, 228 (6th Cir.1986), *cert. denied*, 479 U.S. 1007, 107 S.Ct. 645, 93 L.Ed.2d 701 (1987); *Dime Coal Co. v. Combs*, 796 F.2d 394, 396 (11th Cir.1986); *Northeast Dep't ILGWU Health & Welfare Fund*, 764 F.2d at 154 n. 6.

One federal court has "implied" statutory authority for nonenumerated parties

to sue under ERISA, based on a three-part test. *See Fentron Indus. v. National Shopmen Pension Fund,* 674 F.2d 1300, 1304 (9th Cir.1982). Under *Fentron,* statutory authority to sue will be implied if the potential plaintiff (1) has suffered an injury in fact, (2) arguably falls within the zone of interests the statute was designed to protect, and (3) can show that the statute itself does not expressly preclude the suit. *Id.*

However, as stated above, most courts, including the Fifth Circuit, have expressly rejected the notion of extending ERISA's reach to parties other than those specified in the statute. *Hermann Hosp.,* 845 F.2d at 1289. The court in *Hermann Hosp.* specifically held that "non-enumerated" parties do not have standing to sue under ERISA. The court agreed with the Second Circuit that "only Congress is empowered to grant and extend subject matter jurisdiction of the federal judiciary, ... and that courts are not to infer a grant of jurisdiction absent clear legislative mandate." *Id.* at 1288, quoting *Pressroom Union Printers League Income Security Fund v. Continental Assurance Co.,* 700 F.2d 889, 892 (2d Cir.), *cert. denied,* 464 U.S. 845, 104 S.Ct. 148, 78 L.Ed.2d 138 (1983). The court concluded that the silence of ERISA's legislative history indicated Congress' intent that ERISA's standing/jurisdictional provisions be exclusive. *Hermann Hosp.,* 845 F.2d at 1288.

Thus, § 1132(a)(1)(B)'s remedies apply only to participants or beneficiaries. "Congress simply made no provision in § 1132(a)(1)(B) for persons other than participants and beneficiaries to sue, including persons purporting to sue on their behalf." *See Northeast Dep't ILGWU Health & Welfare Fund,* 764 F.2d at 154 n. 6.

Erbauer was not a participant or beneficiary under the plan, and although Pan American attempts to characterize Erbauer as a fiduciary for purposes of ERISA standing, Erbauer denies this status. I do not address the issue of Erbauer's standing to sue as a fiduciary under ERISA, a question properly left to the federal court.

I would find that Erbauer's standing or lack of standing to sue under ERISA does not change the fact that ERISA preempts Erbauer's suit, as discussed above. Preemption focuses on the subject matter of the claim, not on the party bringing suit. It would circumvent the well-defined, comprehensive regulatory purposes of ERISA to allow a nonenumerated party's lack of standing to nullify the statute's comprehensive preemption provisions. *Hermann Hosp.,* 845 F.2d at 1290. ERISA provides that it "shall supersede *any and all State laws* insofar as they may now or hereafter relate to an employee benefit plan" covered by the Act. 29 U.S.C.S. § 1144. The statute makes no exception for state laws allowing a claim relating to an ERISA benefit plan that is brought by a party not entitled to sue under ERISA. "Any and all state laws" reasonably includes state causes of action brought by a nonenumerated party. It is unfortunate that Erbauer may be deprived of a claim he would otherwise have standing to assert under state law, but for federal law preemption, but that circumstance does not allow a court to ignore the language of the statute, the Congressional intent that ERISA's coverage be comprehensive, and the judicial precedent on the scope of ERISA preemption.

Further, I note that even plaintiffs authorized to sue under ERISA may not recover extracontractual damages, such as those sought by Erbauer here, for a breach of fiduciary duty arising from the improper or untimely processing of a claim for benefits. *Massachusetts Mut. Life Ins. Co. v. Russell,* 473 U.S. 134, 144, 105 S.Ct. 3085, 3091, 87 L.Ed.2d 96 (1985). Although ERISA allows participants and beneficiaries to recover the plan benefits, a remedy not available to a nonenumerated party, the additional injury alleged in an extracontractual claim is arguably the same as that asserted by a nonenumerated party. It is unlikely that Congress intended to allow parties with no standing to sue under ERISA to recover extracontractual damages, when the group that ERISA was designed to protect may not sue for such damages under ERISA. *See Hermann Hosp.,* 845 F.2d at 1290.

I next turn to the question of whether Pan American waived its defense of ERISA preemption by failing to assert it in the trial court.

## Waiver of ERISA

Despite the comprehensive scope of ERISA coverage and its extensive preemption provisions, recent decisions have held that the statute's applicability can be waived in some instances. These decisions have drawn a distinction between ERISA as a choice-of-law issue and ERISA as a choice-of-forum issue. If the application of ERISA is a choice-of-law question, the failure to timely assert it has been held to constitute a waiver. *Castillo v. Neely's TBA Dealer Supply, Inc.,* 776 S.W.2d 290, 294 (Tex.App.—Houston [1st Dist.] 1989, writ denied); *Great North Am. Stationers, Inc. v. Ball,* 770 S.W.2d 631, 633 (Tex.App.—Dallas 1989, writ requested); *see also Dueringer v. General Am. Life Ins. Co.,* 842 F.2d 127, 129–30 (5th Cir.1988).

If, on the other hand, the application of ERISA involves a choice of forum, the failure to assert it in the trial court does not constitute a waiver. *See International Longshoremen's Ass'n v. Davis,* 476 U.S. 380, 391–92, 106 S.Ct. 1904, 1912–13, 90 L.Ed.2d 389 (1986). Although four dissenting justices in *Davis* would have held that even federal preemption affecting the choice of forum could be waived, the federal statute involved in *Davis* was the National Labor Relations Act, and not ERISA. The dissenting opinion is premised on the fact that the National Labor Relations Act was silent on the question of preemption of state court jurisdiction, and that Congressional intent as to preemption of a state forum was not at all clear from the Act. That is not the case with ERISA's express designation of exclusive federal jurisdiction and when jurisdiction is concurrent in the state courts.

To decide whether this case involves a choice-of-forum question or merely a choice-of-law question, I first examine ERISA's grant of jurisdiction to the courts.

## Federal or State Court Jurisdiction

ERISA provides for exclusive federal court jurisdiction in certain circumstances and for concurrent federal and state court jurisdiction in other types of ERISA actions. For most suits brought under ERISA, the federal courts have exclusive jurisdiction. 29 U.S.C.S. § 1132(e)(1). The only exception to exclusive federal court jurisdiction is that state courts have concurrent jurisdiction to hear suits brought under 29 U.S.C.S. § 1132(a)(1)(B), which allows a participant or beneficiary to sue:

to recover benefits due to him under the terms of his plan;

to enforce his rights under the terms of the plan; or

to clarify his rights to future benefits under the terms of the plan.

Because § 1132(a)(1)(B) allows suit only by a participant or beneficiary, Erbauer's claim on its face does not fall within its provisions. Thus, if Erbauer has a justiciable claim, it must necessarily fall within the exclusive jurisdiction of the federal courts, according to the express provisions of 29 U.S.C.S. § 1132(e).

Even disregarding the standing issue, I note that the substance of Erbauer's claim against Pan American was not in any way analogous to a suit to recover benefits, to enforce a beneficiary's rights, or to clarify the participant's rights to future benefits under § 1132(a)(1)(B). Instead, the claim alleged Pan American's improper handling of the employee's claim for benefits, and was most closely analogous to one for breach of fiduciary duty under 29 U.S.C.S. § 1109, which may be brought by a participant, beneficiary, or fiduciary. 29 U.S.C.S. § 1132(a)(2). Thus, though the question of Erbauer's standing to sue as a fiduciary has not been resolved, I find that even if Erbauer were found to be a fiduciary, its suit would fall within the exclusive jurisdiction of the federal courts. 29 U.S.C.S. § 1132(e).

I note that the Gills intervened in the original suit as party plaintiffs, and their status as beneficiaries would have conferred upon the state court the concurrent jurisdiction to hear their ERISA claims un-

der 29 U.S.C.S. § 1132(a)(1)(B). However, the Gills settled all their claims before the trial on Erbauer's causes of action, and only Erbauer's claims were litigated to judgment and appealed. Despite the unusual procedural history of having a beneficiary participate in the suit at one time, I would not infer any derivative jurisdiction over Erbauer's claims from the fact that the court would have had jurisdiction to hear the Gills' ERISA claims. Courts have no authority to extend a statutory grant of jurisdiction, especially one as clearly expressed by Congress as in ERISA. Congress here has given concurrent jurisdiction to the state courts only to hear specific kinds of claims brought by participants or beneficiaries.

Because the type of claim asserted by Erbauer was one reserved to the exclusive jurisdiction of the federal courts, the application of ERISA preemption involved a mandatory federal forum, rather than merely a choice-of-law question that could be resolved in either a state or a federal court. Thus, Pan American's failure to assert ERISA preemption in the trial court was not waived, because ERISA expressly preempts state court jurisdiction to consider at all the type of claim asserted here. *See International Longshoremen's Ass'n,* 476 U.S. at 391–92, 106 S.Ct. at 1912–13; *Castillo,* 776 S.W.2d at 292.

In sum, I would hold that (1) ERISA preempts the subject matter of Erbauer's claim, without regard to whether Erbauer has standing to sue under ERISA, (2) the nature of Erbauer's claim was such that it falls within the exclusive jurisdiction of the federal courts, (3) because ERISA preemption involves a mandatory choice of forum rather than merely a choice-of-law question, here, it was not waived, and (4) the state court had no jurisdiction to hear Erbauer's preempted claim.

I would reverse the judgment of the trial court and dismiss the case.