**Randall G. DUERINGER,**
**Plaintiff–Appellee,**

v.

**GENERAL AMERICAN LIFE**
**INSURANCE COMPANY,**
**Defendant–Appellant.**

**No. 86–4929.**

United States Court of Appeals,
Fifth Circuit.

April 15, 1988.

Whitman B. Johnson, III, Steen, Reynolds, Dalehite & Currie, Jackson, Miss., for defendant-appellant.

Richard C. Roberts, III, James W. Nobles, Jr., Jackson, Miss., for plaintiff-appellee.

Before THORNBERRY, POLITZ and JOLLY, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

Randall Dueringer brought this case alleging breach of contract and bad-faith denial of his insurance claim against General American Life Insurance Company ("General American") under a group policy of his former employer. The jury awarded Dueringer $5,852.18 in actual damages and $360,000 in punitive damages. The central issue on appeal concerns General American's conduct in denying coverage under an extended medical benefits provision in its policy that required Dueringer to be continuously disabled from the date of the covered injury until the time the claim arose.

I

Dueringer was hired in November 1981 by Richardson Equipment Company ("Richardson"), a company selling swimming pools and related equipment. While at Richardson, Dueringer worked as a salesman, and on infrequent occasions helped construct the pools that he sold. His employment at Richardson came to an abrupt end on November 11, 1982, when he suffered serious injuries to his knee and nose in an automobile accident. The accident left Dueringer temporarily unable to work, and he began receiving disability and major medical payments under his employee insurance plan. The payments continued until May 1, 1983, when Richardson discharged Dueringer and notified General American to remove him from their policy.

Dueringer attempted to obtain work in the swimming pool business from other

builders and pool suppliers. Although he still did some intermittent work, he testified that he was unable to perform his regular work because of his continued knee problems. He also was unable to sell pools because his nose was severely disfigured from the accident. Because of his continued physical impairments, Dueringer asked General American whether reconstructive surgery on his knee and nose would be covered by his former insurance policy. In response to the claims agent's questions, he said that he could walk and work. Thus he was informed that the operations would not be covered because he was not "totally disabled." Nevertheless, in September 1983, Dueringer had the surgery performed and then sought payment from General American. Upon receipt of Dueringer's claim for $5,852.17 in January 1984, General American immediately denied the claim because their file records did not indicate "total disability." It is undisputed that because Dueringer had been removed from the group policy in May 1983, the only coverage for which he possibly qualified was under the extended benefits provision, which allowed for payment of medical expenses to claimants who had been continuously "disabled" from an injury incurred while the policy was in force. The insurance policy defined "disabled" as "unable to perform *regular* work because of injury or sickness" (emphasis added).

After General American's initial denial of coverage, Dueringer had no further contact with General American, but on April 27, 1984, his attorney wrote a letter to General American requesting payment. General American reopened the case and a claims officer wrote Dr. Elmer Nix, Dueringer's physician, and asked if Dueringer had been "totally disabled." Nix replied that Dueringer was probably able to return to work "sometime between 4 April 1983 and 23 June 1983." General American also asked Richardson personnel whether Dueringer was "totally disabled" and was told that they had no records to indicate that Dueringer was totally disabled after May 1, 1983. On September 11, 1984, General American informed Dueringer that his operations were not covered under the policy because their investigation showed that he was not disabled from his prior injury at the time of his operations. Dueringer did not provide any information to General American indicating that he was disabled, but rather filed suit in federal district court, alleging breach of contract and bad-faith denial of insurance benefits.

At trial, the jury found for Dueringer in the amount of $5,852.18 in actual damages and $360,000 in punitive damages. General American then filed a motion for judgment notwithstanding the verdict, which was denied.

## II

On appeal, General American raises three major contentions. First, General American asserts that ERISA preempts this state common law action. Second, it argues that there is no evidence to support a punitive damages award. Finally, the company challenges the breach of contract award of actual damages because the evidence indicates that Dueringer was not disabled at the time of the claims and hence not covered by the extended benefits provision of the policy.

### A.

On April 6, 1987, the Supreme Court decided *Pilot Life Insurance Co. v. Dedeaux*, —— U.S. ——, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987) (*"Dedeaux II"*), holding that ERISA preempts state common law actions that involve certain employee benefit plans. *Dedeaux II* reversed the Fifth Circuit holding in *Dedeaux v. Pilot Life Insurance Co.*, 770 F.2d 1311 (5th Cir.1986) (*"Dedeaux I"*), which was decided approximately eleven months after this litigation commenced. General American now maintains that *Dedeaux II* requires application of the preemption doctrine to this case.

In addressing this issue, we must first decide whether this defense was waived because General American failed to raise it at trial. General American argues that it was precluded from asserting preemption until now because of the Fifth Circuit's

decision in *Dedeaux I*, which held such claims were not preempted.

Dueringer responds to this argument with two Ninth Circuit cases that hold that where preemption involves a choice-of-law question, as in the present case, it must be asserted as an affirmative defense. *Johnson v. Armored Transport of California, Inc.*, 813 F.2d 1041, 1043–44 (9th Cir.1987); *Gilchrist v. Jim Slemons Imports, Inc.*, 803 F.2d 1488, 1497 (9th Cir.1986). Dueringer argues that since General American failed to raise this affirmative defense in a timely manner, the issue is not before us.

■ We agree that General American cannot now claim the preemption defense. First, preemption in this case clearly involves a choice-of-law question and therefore must be asserted as an affirmative defense. *See Johnson*, 813 F.2d at 1043–44; *Gilchrist*, 803 F.2d at 1497. General American's contention that it was specifically precluded from pleading preemption as a defense because of this court's decision in *Dedeaux I* is disingenuous. *Dedeaux I* was not decided until eleven months after General American's answer was due. Thus, even if *Dedeaux I* could excuse the failure to assert the defense, which we do not hold, it was not a bar to the defense when General American filed its *only* answer; nor did it seek to raise the defense while *Dedeaux I* was pending before the Supreme Court. It has therefore neglected this legal defense too long to raise the issue first on appeal.

### B.

We now turn to the award of punitive damages. General American contends that the evidence does not support a jury instruction on the issue of bad-faith denial of an insurance claim. The Mississippi Supreme Court has determined that such tortious injury occurs "when an insurer's refusal timely to pay a just claim is sufficiently egregious that we label it an independent tort. Where an insurer has acted with malice or with gross negligence and reckless disregard for the rights of the

insured, punitive damages may be assessed." *Life Ins. Co. of Mississippi v. Allen*, 518 So.2d 1189, 1193 (Miss.1987) (citations omitted).

In determining whether General American was entitled to a directed verdict on the issue of bad faith, we must consider whether sufficient evidence was presented at trial from which the jury could find that "either malice or gross neglect/reckless disregard had been established." *Id.* A denial of a claim will constitute bad faith only where the insurance company's conduct is so egregious as to constitute an independent tort. *State Farm Fire & Casualty Co. v. Simpson*, 477 So.2d 242, 248 (Miss.1985). If the evidence suggests that General American had a legitimate reason or arguable basis for denying the claim, then its conduct cannot constitute bad faith. *See Standard Life Ins. Co. of Indiana v. Veal*, 354 So.2d 239, 248 (Miss. 1977). A claim of bad-faith denial thus "should not reach the jury unless reasonable minds could differ as to the insurance company having a legitimate or arguable reason for denying the claim." *Pioneer Life Ins. Co. of Illinois v. Moss*, 513 So.2d 927, 930 (Miss.1987). We thus turn to examine the evidence at the time Dueringer's claim was denied and then decide whether General American's denial presented an arguable claim of bad faith.

On December 30, 1983, Dueringer filed his claim requesting payment for surgery performed the previous September. General American initially declined payment because his coverage had terminated on May 1, 1983, and because neither its records nor any information furnished by Dueringer indicated that Dueringer was "totally disabled." After Dueringer made a second payment request through an attorney, General American conducted an investigation. Upon an examination of its policy, General American determined that the only relevant provision in the policy was the extended medical benefits provision that required continuous disability from the initial injury.[1] It then wrote Richardson and Dr. Nix,

---

1. General American concedes that the applicable test is not "totally disabled," but whether

Dueringer's attending physician at the time of the accident. Richardson replied that its records did not indicate that Dueringer was "totally disabled"; Dr. Nix responded that Dueringer was probably able to return to work by June 23, 1983. On the basis of this additional evidence, General American advised Dueringer that his physician indicated that he was not "totally disabled" and General American must therefore affirm its earlier denial of benefits. Dueringer did not respond or in any way inform General American that he was in fact unable to perform regular work. Instead, he initiated this suit.

■ Based on this evidence in the hands of General American, a dispute did exist as to whether Dueringer had been continuously disabled from the time of his injury. To be sure, as of September 11, the only information General American possessed indicated no continuing disability, and Dueringer supplied no information to the contrary.[2] We are convinced that under Mississippi law, when the insurer has information from both the insured's physician and his employer that can reasonably be interpreted to indicate that a claim is not covered under the terms of the policy, and where the insured produces no evidence to refute such a reasonable interpretation, no case can lie for punitive damages against the insurer who denies the claim. *See Standard Life Ins. Co. of Indiana v. Veal*, 354 So.2d at 248. The jury award of $360,000 for punitive damages is therefore reversed.

### C.

■ Finally, General American contends that the evidence does not support a finding of breach of contract. This argument will not stand. Dueringer introduced evidence, through trial testimony and work records, supporting his contention that he was physically disabled and unable to perform his regular work. For example, there was evidence introduced at trial that he could work only intermittently, that he was unable to sell pools because of his disfigurement, and that pool contractors would not hire him because of his physical impairments. In short, there was evidence before the jury that at the time the claim arose, Dueringer had been continuously disabled in the sense that he was still unable to perform regular work. Thus, the jury had an ample evidentiary basis for concluding that General American breached the terms of its policy when it denied coverage. We therefore uphold the jury verdict with respect to breach of contract.

### III

In conclusion, we uphold the jury verdict on actual damages and, for the reasons stated in this opinion, reverse the jury award of punitive damages. The case is remanded for entry of judgment in conformance with this opinion. The judgment of the district court is therefore

AFFIRMED IN PART AND REVERSED IN PART.

---

Dueringer was able to perform "regular" work. Dueringer seems to argue at times that this misinterpretation of the policy justifies a punitive damage award since Dr. Nix's answer might have been different—and General American's view of Dueringer's rights should have been different—had his disability been evaluated under the correct standard.

At trial, however, General American contended that "totally disabled" and "disabled" were synonymous in their connotation. We need not explore the difference in the meaning of the terms, however, because on the record before us General American's error, if any, was only negligence, and as such would not support a punitive damages award.

**2.** Although we must focus upon General American's conduct at the time of the second denial, we note that from the evidence submitted at trial, it is far from clear that Dueringer was unable to perform his regular work. For example, the record shows that he worked for a pool contractor after his accident.