GREAT NORTH AMERICAN
STATIONERS, INC.,
Appellant,

v.

David L. BALL, Michael Flores, David
Stinson, Appellees.

No. 05–87–00386–CV.

Court of Appeals of Texas,
Dallas.

May 2, 1989.

Rehearing Denied May 2, 1989.

**632**

Cynthia Hollingworth, Ann M. O'Regan, Dallas, for appellant.

F. Dean Armstrong, Flossmoor, Ill., for appellees.

Before HOWELL,[1] THOMAS and KINKEADE, JJ.

THOMAS, Justice.

Appellees, David L. Ball, Michael Flores and David Stinson, former employees of appellant, Great North American Stationers, Inc., (GNAS)[2] sued GNAS to recover benefits under the GNAS profit-sharing plan. The trial court rendered judgment in favor of the former employees. GNAS raises seven points of error, contending that the former employees' state law causes of action were preempted by federal law and that the amount of attorneys' fees awarded was excessive. We conclude that GNAS has waived its claims of federal preemption. Further, we hold that the attorneys' fees award was proper. Accordingly, we affirm the judgment of the trial court.

■ In points of error one through six, GNAS contends that the former employees' state law causes of action to recover pension benefits have been preempted by the passage of the federal Employee Retire-ment Income Security Act (ERISA). We note, however, that GNAS has raised this federal preemption argument for the first time on appeal. The employees argue that federal preemption has been waived. GNAS contends that a claim of federal preemption is a challenge to the court's subject matter jurisdiction and cannot be waived.

In *International Longshoremen's Association v. Davis*, 476 U.S. 380, 106 S.Ct. 1904, 90 L.Ed.2d 389 (1986), the Supreme Court considered whether a preemption argument based on the National Labor Relations Act "is in the nature of an affirmative defense that must be asserted in the trial court or be considered forever waived or whether it is in the nature of a challenge to a court's power to adjudicate that may be raised at any time." *Davis*, 476 U.S. at 381–82, 106 S.Ct. at 1907, 90 L.Ed.2d at 395. The Court concluded that when a state proceeding is claimed to be waived by the National Labor Relations Act, which give the National Labor Relations Board exclusive power to determine certain disputes, the issue is a non-waivable choice-of-forum, rather than a choice-of-law question. *Davis*, 476 U.S. at 391, 106 S.Ct. at 1912, 90 L.Ed.2d at 401. From the Court's conclusion we identify the following rule: a preemption argument that affects the choice of forum rather than the choice of law is not waivable; conversely, a preemption claim that affects only the law to be applied and not the court which may hear the dispute is waivable. *Dueringer v. General American Life Ins. Co.*, 842 F.2d 127, 130 (5th Cir.1988); *Gilchrist v. Jim Slemons Imports, Inc.*, 803 F.2d 1488, 1497 (9th Cir.1986).

We conclude that GNAS's ERISA pre-emption claim implicates only a choice of law question. Even if the preemption claim were valid, it would not force the former employees to bring their action in a

---

1. Justice Charles Ben Howell did not participate in this decision.

2. On November 16, 1987, and after this appeal had been perfected, this Court permitted GNAS's present appellate counsel to substitute for GNAS's former counsel as attorneys of record. Any comment or reference of any kind in this opinion to the quality of GNAS's representation before that date is expressly not directed toward Gardere & Wynne or any member of that firm.

different forum. State courts of competent jurisdiction have jurisdiction of actions by a plan participant to recover benefits due to him under the terms of the plan, to enforce his rights under the plan, or to clarify his rights to future benefits. 29 U.S.C.A. § 1132(a)(1)(B) & (e) (West 1985); *Ames v. Ames,* 757 S.W.2d 468, 473 (Tex. App.—Beaumont 1988, writ granted). GNAS's preemption argument thus affects only the choice of law and not the choice of forum. GNAS has neglected the preemption issue too long to raise the issue first on appeal.[3] Points of error one through six are overruled.

In point of error seven, GNAS contends that the award of attorneys' fees is excessive. The trial court awarded the three former employees a total of $225,008 as attorneys' fees through trial, $110,750 in the event of appeal to the court of appeals, and $37,950 in the event of appeal to the Texas Supreme Court. GNAS bases its argument that these fees are excessive in part upon its contentions that the former employees were not entitled to recover because of the ERISA preemption. We deem this argument waived. Nevertheless, GNAS argues that the amount of attorneys' fees is excessive even if the employees were entitled to the full amount of damages assessed at trial.

GNAS contends that the $225,008 in attorneys' fees awarded at trial were excessive because they were not reasonably related to the $90,724.38 in damages. One of the factors in determining the reasonableness of attorneys' fees is the amount of damages awarded. *Wayland v. City of Arlington,* 711 S.W.2d 232, 233 (Tex.1986). However, this is only one among many factors to consider. In fact, there are twelve factors that are ordinarily considered to ascertain reasonable attorneys' fees: (1) the time and labor required; (2) the novelty and difficulty of the question;

(3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client in the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *See Gill Savings Association v. International Supply Co.,* 759 S.W.2d 697, 703–04 (Tex.App.—Dallas 1988, writ denied). These factors are consistent with those set out in Disciplinary Rule 2–106(B) of the Texas Code of Professional Responsibility.

Dean Armstrong, an attorney for the former employees, testified that he had spent 712.7 hours on pretrial matters for his three clients and 492 hours at trial. He anticipated spending an additional forty hours on post-verdict matters. Armstrong testified that his hourly rate was $150.00. William Wright, another attorney for the former employees, testified that he spent forty hours on pretrial matters and 492 hours at trial. He anticipated spending an additional forty hours on post-verdict matters. Wright testified that his hourly rate was $250.00.

Both Armstrong and Wright testified that the issues involved in this lawsuit were novel and difficult, requiring many hours of research. They both testified that they considered the pre-trial matters and the seven-week trial inordinately intense and complex. Armstrong stated that much of his pretrial time was taken up with combatting "excessive and abusive" depositions. He stated further that he had anticipated that trial would take only two to three weeks, but that it was unnecessarily prolonged by the conduct of GNAS's trial

---

**3.** We are aware that the Houston court has held that ERISA preemption is jurisdictional and cannot be waived. *Gorman v. Life Ins. Co. of North America,* 752 S.W.2d 710, 713 (Tex.App.—Houston [1st Dist.] 1988, writ filed). We disagree. Accordingly, we decline to follow *Gorman.* We note further that federal preemption

was raised at trial in *Gorman;* the party's complaint was that it was not raised as an affirmative defense. *Id.* at 713. Because federal preemption was not raised at trial in any fashion in the case at bar, we need not decide whether the issue must be raised as an affirmative defense in the pleadings.

counsel. Armstrong testified further that during the seven weeks of trial it was impossible to work on other matters for other clients.

Armstrong testified further that he had graduated cum laude from Notre Dame Law School and began working as a lawyer in Dallas in 1977. He testified concerning his awards, honors and publications. Wright also testified concerning his credentials. GNAS's trial counsel stipulated "to Mr. Wright's expertise and to his qualifications as an accomplished trial lawyer." Both Wright and Armstrong testified that they were familiar with the fees charged in Dallas and that their fees were reasonable and necessary in this case.

■ We conclude that this evidence amply supports the attorneys' fees award through trial. The fact that the fees awarded were almost three times the damages awarded does not render the attorneys' fees excessive. This Court has upheld an award of attorneys' fees that was nearly seven times the actual damages. *See Flint & Associates v. Intercontinental Pipe & Steel, Inc.,* 739 S.W.2d 622, 626 (Tex.App.—Dallas 1987, writ denied).

■ GNAS also complains of the amount of the attorneys' fees award for appeal. GNAS does not argue that the evidence offered at trial fails to support the amount of appellate attorneys' fees. Rather, GNAS argues that the fees are excessive because GNAS chose to limit the appeal to the narrow issue of federal preemption. The role of this Court is to determine whether the trial court erred in rendering judgment based upon the record before it. *See Gould v. City of El Paso,* 440 S.W.2d 696, 699 (Tex.Civ.App.—El Paso 1969, ref'd n.r.e.); *see also Thompson v. Haberman,* 739 S.W.2d 71, 72 (Tex.App.—San Antonio 1987, orig. proceeding) (court of appeals must consider the record as it appeared before the trial court at the time of its ruling). Thus, we will not consider GNAS's post-judgment decision to limit the appeal in determining whether the trial court, based on the record before it, erroneously awarded excessive appellate attorneys' fees.

Armstrong testified that, based upon his past experience, he would estimate attorneys' fees of $120,000 through appeal to the court of appeals. This estimate was based upon the complexities of the issues in the case, the potential scope of the record in a seven-week trial, and the number of objections made by GNAS to preserve error. Armstrong testified further that it was possible that GNAS would appeal only three or four issues; in that event, the appeal would only cost $50,000. Armstrong also estimated that appeal to the Texas Supreme Court would cost approximately $40,000. He testified that these fees were reasonable and necessary.

Wright testified that he had been involved in "an enormous amount" of appeals. He disagreed with Armstrong's estimate that the appeal would cost $120,000 to the court of appeals. He considered $80,000 to be the reasonable and necessary fee for the appeal to the court of appeals and $25,000 to the supreme court.

We hold that the trial court's award of attorneys' fees of $110,000 to the court of appeals and $37,950 to the supreme court was not excessive in light of the evidence before the court. Point of error seven is overruled.

Having overruled GNAS's seven points of error, we affirm the trial court's judgment.

KINKEADE, J., concurs.

KINKEADE, Justice, concurring.

I agree with the majority that, based on the record before it, the trial court did not abuse its discretion in awarding the amount it did for appellate attorney's fees. I also agree with the majority that we are precluded from considering GNAS's post-judgment decision to narrow the scope of appeal because that decision is not part of the record. *Allied Finance Co. v. Garza,* 626 S.W.2d 120, 127 (Tex.App.—Corpus Christi 1981, writ ref'd n.r.e.). Accordingly, I do not dissent. However, I write separately because the case law concerning standards when reviewing a complaint about excessive attorney's fees principally

concern attorney's fees at the trial level. I believe appellate costs should be reviewed differently.

The costs of appeal are dictated by the scope of the challenge of the trial court's judgment. However, the parties must present evidence of appellate costs before they ascertain the breadth of a possible appeal. Consequently, the amount awarded may bear little relationship to the actual costs. The instant case is the perfect example. Appellees will receive $110,750 because they have prevailed on this appeal. Counsel for those same appellees testified that if the appeal was limited to four or less issues, then the cost of the appeal to this Court would be about $50,000. Attorney's fees must be reasonable. *Commonwealth Lloyd's Ins. Co. v. Thomas*, 678 S.W.2d 278, 284 (Tex.App.—Fort Worth 1984, writ ref'd n.r.e.). Appellee's counsel, by conceding that he will receive a $60,000 windfall also concedes the award was unreasonable. Nevertheless, we are precluded from acting because at the time of trial $110,750 was also a reasonable forecast of possible appellate costs.

Furthermore, this result frustrates the policy of promotion of judicial economy. GNAS limited their review to a narrow issue of law. GNAS has not filed a statement of facts except with respect to its challenge of the attorney's fee award. Today's decision gives appellants less incentive to limit the scope of their appeal. When an appellant chooses to limit his appeal, he should be rewarded, otherwise, we encourage a shot-gun blast approach to appeals. Efforts to limit litigation to the genuine issues in dispute should be encouraged.

The evidence presented at trial regarding appellate costs is inherently speculative. In situations such as the present one, where the appellant has voluntarily limited the scope of his appeal, and the amount awarded is manifestly disproportionate to the actual costs of appeal, we should have discretion to suggest a remittitur or to remand for a hearing before the trial judge to recalculate the costs of appeal. We punish frivolous appeals, why not reward ap-

peals limited to the real dispute. A carrot often works better than a stick.