In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-02-00133-CV


______________________________




IN THE MATTER OF THE MARRIAGE OF


LYNN DALE SMITH AND


NORMA ALENE SMITH





 


On Appeal from the 196th Judicial District Court


Hunt County, Texas


Trial Court No. 63,694




 




Before Morriss, C.J., Ross and Carter, JJ.


Opinion by Justice Carter



O P I N I O N



 Lynn Dale Smith (Mr. Smith) appeals the division of property in the decree dissolving his
marriage to Norma Alene Smith (Ms. Smith), in which the trial court awarded her seventy-five
percent of the retirement benefits Mr. Smith began receiving in 1985. At issue is the legal effect of
the residuary clause, Paragraph XII, of the couple's separation and partition agreement entered into
in 1982.

Factual and Procedural Background

 Lynn Dale Smith and Norma Alene Smith were married in 1953. In 1982, Ms. Smith filed
for divorce, but it was never finalized. In December 1982, they entered into an agreement captioned
"Separation and Partition Agreement" (the 1982 Agreement). Approximately twenty years of
separation followed. In 2001, Mr. Smith filed a petition for divorce. In his petition, he relied on the
1982 Agreement for a division of the property. Ms. Smith filed a counterpetition for divorce, in
which she was silent as to the 1982 Agreement and asked the trial court to divide the marital estate
in a "just and right" manner as prescribed by the Texas Family Code. In the 1982 Agreement, Mr.
and Ms. Smith divided real estate, vehicles, farm equipment, and made arrangements as to medical
and life insurance and as to certain other retirement benefits. At the center of the dispute is
Paragraph XII, the residuary clause, of the 1982 Agreement and its application to the disposition of
certain benefits Mr. Smith began receiving on retirement. Paragraph XII provides:


XII


 The parties agree that, except as provided herein, each party shall own, have,
and enjoy, independently of any claim or right of the other party, all property of every
kind, nature, and description, wheresoever situated, which is now owned or held by
him or her, or which may hereafter belong or come to belong to him or her, with full
power to him or her to dispose of the same as fully and effectively in all aspects and
for all purposes, as if he or she were unmarried.


 For eleven years, before working with Aramco, Mr. Smith worked with Reynold's Electric
as an operating engineer. Based on this service, Mr. Smith began to receive checks from the
Operating Engineers' Pension and Retirement programs for approximately $270.00 in 1984. This
retirement plan is specifically allocated in Paragraph X of the 1982 Agreement: "all income from
the Operating Engineers' Pension and Retirement programs will be received by Husband during the
course of their separation, but that any rights that Wife may have to such fund upon Husband's death,
shall in no way be altered."

 In June 1985, Mr. Smith also began receiving a monthly payment in the amount of $1,950.00
labeled General Organization For Social Insurance Department Of Overseas Benefits, Riyadh
Kingdom of Saudia Arabia (GOSI retirement benefits). The 1982 Agreement purports to dispose
of "most of their community property." But it makes no specific reference to the disposition of the
GOSI retirement benefits. While the provisions for division of the marital estate are quite specific,
the agreement did exclude specific reference to certain items in the community estate, such as cattle
and a parcel of land. In total, the current value of the real estate and other assets divided between
the parties is disproportionate. According to Ms. Smith's calculations, Mr. Smith received property,
including the retirement benefits received, that is now valued at approximately between
$618,000.00-$620,000.00, and Ms. Smith received property currently valued at approximately
$100,000.00. 

 In large part, the divorce decree divided the property in accordance with the terms of the 1982
Agreement. In a one-page memorandum preceding the divorce decree, (1) the trial court concluded,
however, that the agreement did not cover the GOSI retirement benefits and, to "balanc[e] the
equities" and since Mr. Smith failed to maintain a life insurance policy benefitting Ms. Smith as
required under their agreement, allotted Mr. Smith twenty-five percent of the GOSI retirement
benefits and seventy-five percent to Ms. Smith. 

Analysis

Ms. Smith's Crosspoint: ERISA Preemption

 On appeal, Ms. Smith contends the federal Employee Retirement Income Security Act
(ERISA) preempts state law that allows the trial court to distribute the benefits from the Aramco
retirement plan. While it is true ERISA represents broad federal preemption in matters concerning
retirement plans, Ms. Smith did not raise this issue at trial. Although whether ERISA would have
preempted the state law authorizing distribution of the GOSI retirement plan would likely pose
interesting issues, this Court must refrain from addressing it. At first glance, the ERISA preemption
issue sounds in terms of subject matter jurisdiction. After further research, we conclude that the
question poses a conflict of federal and state law rather than a question of subject matter jurisdiction.

 The United States Supreme Court addressed the issue of failure to raise a preemption
argument at trial and whether that failure waives the argument. Int'l Longshoremen's Ass'n v. Davis,
476 U.S. 380, 381-82 (1986). After having defended the suit on the merits, appellant union argued
for the first time in its motion for judgment notwithstanding the verdict that the National Labor
Relations Act (NLRA) preempted the appellee's state claims of fraud and misrepresentation. Id. at
385. The NLRA gives the National Labor Relations Board (NLRB) exclusive power to hear disputes
of this nature. Id. at 390. Since the NLRB has exclusive jurisdiction, the court held that the issue
of preemption presents a choice of forum issue rather than a choice of law issue, and the choice of
forum issue could not be waived by failing to raise it at the trial court level. Id. at 391. From Davis,
a rule has been deduced: a preemption argument that affects the choice of forum cannot be waived
by failure to raise it at trial, whereas a preemption argument that affects only the choice of law to be
applied in the case can, in fact, be waived by such failure. See Dueringer v. Gen. Am. Life Ins. Co.,
842 F.2d 127, 130 (5th Cir. 1988) (holding that preemption of ERISA over state common-law
actions involving an employee benefit plan presented a choice of law question that could be waived). 

 The Dallas court addressed a similar issue when former employees prevailed in a suit to
recover benefits under a profit-sharing plan. Great N. Am. Stationers, Inc. v. Ball, 770 S.W.2d 631
(Tex. App.-Dallas 1989, writ dism'd). The court applied the rule in Davis and came to the
conclusion that the issue of preemption, on these facts, involved only the choice of law to be applied,
rather than the choice of forum. Id. at 632-33. That being so, the issue of preemption was waived
by failure to bring it before the trial court. Id. at 633. Dealing specifically with ERISA, the court
noted that state courts have jurisdiction over plan participants' actions to recover benefits, to enforce
their rights under the plan, and to clarify their rights to benefits in the future. Id. at 633 (citing to
ERISA provisions 29 U.S.C.A. § 1132(a)(1)(B), (e) (West 1985)). All other causes of action under
ERISA fall under the exclusive jurisdiction of the federal courts. 29 U.S.C.A. § 1132(e)(1) (West
1999).

 The Texas Supreme Court confirmed the holding in Ball. See Gorman v. Life Ins. Co. of
N. Am., 811 S.W.2d 542, 545 (Tex. 1991). A party may raise the ERISA preemption argument for
the first time on appeal if the issue of preemption in the case implicates the subject matter
jurisdiction of the court. Id. Otherwise, a party must affirmatively set forth the preemption argument
pursuant to Rule 94 of the Texas Rules of Civil Procedure and must raise the issue at trial, or else
it is waived. See id. at 546; Tex. R. App. P. 33.1(a). 

 Here, Ms. Smith asserts ERISA preemption against Mr. Smith's claim regarding his rights
under the GOSI retirement benefits plan. This claim involves participants' rights and contract
construction and, like the claims in Ball, does fall under ERISA's grant of jurisdiction to the state
courts. It appears that ERISA preemption, here, would not operate to deprive the state trial court of
jurisdiction. Rather, preemption would alter the law that the court would apply to the case. Had the
ERISA preemption argument been raised before the trial court, the resulting issue would concern a
potential conflict between Texas law of community property and domestic relations and federal law
of beneficiaries, assignment, and alienation under ERISA. (2) This conflict would not have taken the
matter out of the trial court's jurisdiction. Therefore, Ms. Smith's failure to assert preemption of
ERISA at trial waives the argument, and the issues that ERISA would have raised with respect to
the distribution of the GOSI retirement benefits are not properly before us.

 Having found that ERISA will not apply to the distribution of these benefits because the issue
was not raised at trial, we will apply Texas law to construe the partition agreement and to examine
the trial court's award of the benefits between Mr. and Ms. Smith.


Standard and Scope of Review

 In the absence of findings of fact and conclusions of law, an appellate court must uphold the
trial court's judgment on any legal theory supported by the record. Seaman v. Seaman, 425 S.W.2d
339, 341 (Tex. 1968). A number of theories could serve as the basis for the trial court's judgment
awarding Ms. Smith seventy-five percent of the GOSI retirement benefits. (3) The trial court could
have construed Paragraph XII of the 1982 Agreement to not cover this particular piece of property
and awarded Ms. Smith seventy-five percent of the retirement plan under a just and right division. 
Ms. Smith contends the trial court awarded her seventy-five percent of the plan since Mr. Smith had
materially breached the 1982 Agreement by his failure to maintain the $350,000.00 life insurance
policy benefitting Ms. Smith. (4) To examine this theory, we must look to basic contract law principles
and determine whether the record supports this theory. Finally, Ms. Smith argues the trial court
could have found the 1982 Agreement to be unconscionable and, therefore, unenforceable. As a
result, the trial court divided the property without reference to the agreement and, instead, issued a
just and right division of the marital estate. We will address each of these theories in turn.

 1. Construction of the Residuary Clause

 Contract construction is a question of law for the court and one that an appellate court will
review de novo. Mr. Smith argues the payments at issue should fall under Paragraph XII of the 1982
Agreement where he retains rights to all his property not otherwise distributed under the agreement. 
Ms. Smith contends the residuary clause does not cover the benefits at issue, making the court's
division of the undistributed community property a proper remedy.

 A spouse has a community property interest in the other spouse's retirement benefits that
accrued during marriage. Valdez v. Ramirez, 574 S.W.2d 748, 749 (Tex. 1978). So, Ms. Smith had
an interest in the accrued GOSI retirement benefits that Mr. Smith earned during their marriage. The
issue before us is whether the 1982 Agreement covers these GOSI retirement benefits. If not, then
the property is held by the spouses as tenants in common and the property is subject to partition by
the court. See Wilde v. Murchie, 949 S.W.2d 331, 332 (Tex. 1997) (citing Busby v. Busby, 457
S.W.2d 551, 554 (Tex. 1970)). If the agreement does cover the GOSI retirement benefits, then the
trial court erred in dividing the property in a manner inconsistent with the terms of the agreement.

 The construction of an unambiguous contract is a question of law for the court. Buys v. Buys,
924 S.W.2d 369, 372 (Tex. 1996). When construing the agreement, our primary concern is to
ascertain and give effect to the parties' intentions as expressed in the agreement. Appleton v.
Appleton, 76 S.W.3d 78, 84 (Tex. App.-Houston [14th Dist.] 2002, no pet.). To ascertain the intent
of the parties, we must examine the entire instrument and give effect to all the provisions so that
none will be rendered meaningless. Id. No single provision, when read alone, should control. 
Coker v. Coker, 650 S.W.2d 391, 393 (Tex. 1983). If the agreement is worded so that it can be given
a certain or definite legal meaning, then the agreement is not ambiguous. Buys, 924 S.W.2d at 372. 
Conflicting interpretations, as we have here, and even unclear language do not necessarily render the
contract ambiguous. Appleton, 76 S.W.3d at 84.

 So, the specific question before us is whether the residuary clause of Paragraph XII contains
a description of the covered property that is sufficient to include the GOSI retirement benefits. The
several analogous cases reveal two general types of residuary clauses used in property agreements. 
One category is the "possession and/or control" residuary clause, generally treated as the more
narrow of the two types. The other general category, referred to as the broadly-worded clauses, uses
language intended to cover a wider range of property. Whether a residuary clause covers retirement
benefits is a frequent issue before the courts, usually the subject of a post-divorce partition suit
pursuant to Section 23.001 of the Texas Property Code. See Tex. Prop. Code Ann. § 23.001
(Vernon 2000); Busby, 457 S.W.2d at 554.

 Retirement benefits were not included in a residuary clause when the clause applied to "any
separate property he may now have or acquire in the future, and all other property of whatever
nature, separate or community, in his possession or claimed by him . . . ." Yeo v. Yeo, 581 S.W.2d
734, 737 (Tex. App.-San Antonio 1979, writ ref'd n.r.e.) (emphasis added). The husband in Yeo
asserted that, since he had the power to terminate his employment and claim his benefits, he had
possession of the benefits and the residuary clause should apply to them accordingly and bar the
subsequent suit to partition the property. Id. The court called this right a future contract right that
did not involve the type of possession necessary to fall into the residuary clause. Id. at 738. 
"Possession," as used in the residuary clause, means "property over which the parties have physical
control or, at least a power of immediate enjoyment and disposition." Id. Relying on the reasoning
in Yeo, the San Antonio Court of Appeals excluded retirement benefits from coverage under the
residuary clause when it covered "any and all other property" in his possession and control. Dunn
v. Dunn, 703 S.W.2d 317, 319 (Tex. App.-San Antonio 1985, writ ref'd n.r.e.); see also Smith v.
Smith, 733 S.W.2d 915, 916 (Tex. App.-Houston [1st Dist.] 1987, writ ref'd n.r.e.); Dessommes v.
Dessommes, 505 S.W.2d 673, 676 (Tex. App.-Dallas 1973, writ ref'd n.r.e.). 

 On the other hand, a residuary clause did dispose of retirement benefits when it read as
follows:

 All of the other properties, financial assets and belongings of the parties hereto,
whether separate or community, not specifically set aside to the defendant [Norbert
Buys] under Paragraph I. above shall be and is hereby specifically set apart, assigned,
given, granted and conveyed to plaintiff [Alene Buys] as the separate property of the
plaintiff herein and the defendant herein expressly releases, assigns, gives, grants and
conveys to the plaintiff herein all the defendant's right title and interest in and to the
property hereby set apart to Plaintiff that he now has or may have, free of and
waiving any and all claims at law or in equity that he has or may have, in whole or
in part to such property.


Buys, 924 S.W.2d at 370; see also Tharp v. Tharp, 772 S.W.2d 467 (Tex. App.-Dallas 1989, no
writ); Teaff v. Ritchey, 622 S.W.2d 589 (Tex. App.-Amarillo 1981, no writ). In a substantially
shorter, but similarly broad, residuary clause, the husband's retirement benefits were awarded under
the divorce decree that incorporated the parties' agreement when the clause simply covered "all
community property not mentioned above." Jacobs v. Cude, 641 S.W.2d 258, 259 (Tex.
App.-Houston [14th Dist.] 1982, writ ref'd n.r.e.). The Jacobs court also emphasized the purpose
of a residuary clause: "By its very nature, a residuary clause encompasses those things not specified
in the decree but included in the community property under the jurisdiction of the court." Id. at 260.

 The residuary clause in the 1982 Agreement between Mr. and Ms. Smith is a broadly-worded
residuary clause, much like the clause at issue in Buys. The language of the clause clearly indicates
that the parties intended that it cover all other property not specifically divided by the agreement
regardless of possession or control. A clause in the first paragraph of the 1982 Agreement refers to
"most of their community property," a reference that Ms. Smith asserts indicates that the parties did
not intend the agreement to address all the property in the marital estate. Again, though, this phrase
must not be read to control the interpretation of the entire agreement. In fact, if we were to conclude,
as Ms. Smith urges, that the phrase "most of their community property" was controlling, then there
would have been no need for the residuary clause at all. See id. The very presence of the residuary
clause negates Ms. Smith's construction of the agreement. 

 The 1982 Agreement does not specifically allocate the GOSI retirement benefits to either
Mr. or Ms. Smith. Accordingly, we conclude the residuary clause of Paragraph XII governs the
disposition of the funds. That being so, the funds, having "come to belong" to Mr. Smith, still
belong to Mr. Smith independent of any claim or right of Ms. Smith, as provided in Paragraph XII. 
Based on a contrary construction of the agreement, the trial court could not have properly divided
the benefits in a manner inconsistent with the 1982 Agreement.

 2. Breach of Contract Theory

 Ms. Smith contends that, since Mr. Smith failed to maintain the life insurance policy as
specified, Mr. Smith breached the agreement. In order for us to uphold the trial court's judgment
based on this theory, we must conclude from the record that the equitable remedy of rescission of
the agreement is proper under these circumstances. 

 As a general rule, equity will not allow rescission of a contract for the mere breach of the
contract, especially when damages would be an adequate remedy. See Ryan v. Collins, 496 S.W.2d
205, 209 (Tex. Civ. App.-Waco 1973, writ ref'd n.r.e.) (citing Chenault v. County of Shelby, 320
S.W.2d 431, 433 (Tex. Civ. App.-Austin 1959, writ ref'd n.r.e.). A partial breach can be sufficient
to grant rescission in only two instances: 1) if it affects a material part of the agreement going to the
essence of the contract, or 2) it clearly evidences an intention by the party in default to rescind or
abandon the agreement. Atkins v. Beasley, 544 S.W.2d 505, 507 (Tex. App.-Waco 1976, no writ). 
The record indicates neither of these circumstances. Maintenance of a life insurance policy for the
benefit of Ms. Smith, while likely very important to Ms. Smith, is not the essence of this agreement,
the purpose of which is to divide a marital estate between spouses. Furthermore, Mr. Smith clearly
did not intend to rescind or abandon the agreement, since he has continued to act in accordance with
the majority of the provisions, as illustrated by his maintenance of health insurance for Ms. Smith
throughout the separation.

 Since we find neither situation in which a partial breach warrants rescission, we conclude that
the record fails to support the judgment on a breach of contract theory.

 3. Unconscionable Contract Theory

 Whether a contract is unconscionable presents a question of law for the court to decide. Tex.
Fam. Code Ann. § 4.105(b); Wade v. Austin, 524 S.W.2d 79, 85 (Tex. Civ. App.-Texarkana 1975,
no writ). A reviewing court has the duty to independently evaluate the trial court's findings on the
law and addresses the issue on a case-by-case basis, looking to the entire atmosphere in which the
agreement was made. Pearce v. Pearce, 824 S.W.2d 195, 199 (Tex. App.-El Paso 1991, writ
denied). Because of the confidential relationship between a husband and wife, Texas courts have
closely scrutinized property agreements made by spouses during marriage and have imposed the
same duties of good faith and fair dealing on spouses as required of partners and other fiduciaries. 
Daniel v. Daniel, 779 S.W.2d 110, 115 (Tex. App.-Houston [1st Dist.] 1989, no writ).

 In our examination of a marital property agreement, we address certain specific
considerations, such as the maturity of the individuals, their business backgrounds, their educational
levels, their experiences in prior marriages, their respective ages, and their motivations to protect
their respective children. See Williams v. Williams, 720 S.W.2d 246, 249 (Tex. App.-Houston [14th
Dist.] 1986, no writ). The term "unconscionable" carries no precise legal definition. Arthur's
Garage, Inc. v. Racal-Chubb Sec. Sys., 997 S.W.2d 803, 815 (Tex. App.-Dallas 1999, no pet.);
Marsh v. Marsh, 949 S.W.2d 734, 739-40 (Tex. App.-Houston [14th Dist.] 1997, no writ) In
general, the term "unconscionable" describes a contract that is unfair because of its overall
one-sidedness or the gross one-sidedness of its terms. Arthur's Garage, 997 S.W.2d at 815. 
However, the courts will not protect "a party who knowingly enters a lawful but improvident
contract . . . ." Wade, 524 S.W.2d at 86. "[T]he fact that a bargain is a hard one does not entitle a
party to be relieved therefrom if he assumed it fairly and voluntarily." Id.

 Here, we first point out that the record indicates approximately twenty years passed from the
time the Smiths entered into this agreement and the time Ms. Smith takes the position that the
agreement was unconscionable. During those twenty years, both parties accepted the benefits under
this agreement without complaint of unconscionability. Furthermore, the agreement itself recites that
both parties were represented by their own "experienced attorneys" and that these represented parties
fully understood the terms of the agreement and considered them "just, adequate and reasonable." 
The trial court, in its memorandum, does not find the contract unconscionable. In fact, the trial court
gives the agreement a great deal of weight in the areas that it covers, weight it would not give if the
agreement were unconscionable.

 While the value of the property that each party received under the contract now seems quite
disproportionate, we do not evaluate whether the contract is unconscionable years later. Rather, we
look to the circumstances at the time the parties entered into the contract. No evidence was
presented as to the value of the retirement benefits as of 1982. Likely, such value was uncertain at
that time. Likewise, the parties could not predict any appreciation or depreciation in value of any
of the property received under the agreement. So, while we note the marked difference in the current
value of the property received by Mr. and Ms. Smith, we cannot say the contract under which each
received the property was an unconscionable one. 

 We conclude that the record reveals no legal theory to support the trial court's decision to
divide the GOSI retirement benefits in the manner it did. Accordingly, we reverse the judgment of
the trial court and render judgment that Mr. Smith, alone, is entitled to the monthly payment of GOSI
retirement benefits.




 Jack Carter

 Justice


Date Submitted: June 19, 2003

Date Decided: August 1, 2003






OPINION ON REHEARING


 In her motion for rehearing, Norma Alene Smith asserts that our opinion conflicts with the
express language of the partition and separation agreement of 1982 and operated to deny her any
survivorship interest in the General Organization For Social Insurance Department Of Overseas
Benefits, Riyadh Kingdom of Saudia Arabia (GOSI retirement benefits) based on our interpretation
of the residuary clause.

 Paragraph X of the agreement states that "any pension or retirement rights that Wife may
have as surviving spouse upon Husband's death under any ARAMCO plan, shall in no way be
altered." We held that "[t]he language of the [residuary] clause clearly indicates that the parties
intended that it cover all property not specifically divided by the agreement regardless of possession
or control." In re Marriage of Smith, No. 06-02-00133-CV, 2003 Tex. App. LEXIS 6688, at *16
(Texarkana August 1, 2003, no pet. h.) (emphasis added).

 The record does not clearly indicate what survivorship rights, if any, Ms. Smith may have
in any ARAMCO plan. From our opinion, however, it is clear Ms. Smith maintains ownership of
whatever survivorship rights she may have had under any ARAMCO plan since the agreement
specifically reserved those rights to her. Our construction of the residuary clause does not alter those
rights. It is the specific language in Paragraph X, not the residuary clause, which governs
Ms. Smith's survivorship rights under the plan.

 With this clarification, we overrule Ms. Smith's motion for rehearing. 



 Jack Carter

 Justice


Date: September 8, 2003

1. The memorandum was signed on October 18, 2001. The divorce decree was signed on
April 23, 2002. It is unclear whether the trial court refused to enforce the 1982 Agreement in its
entirety or in part or whether it enforced the agreement according to its construction of the
agreement. The divorce decree, although silent as to the agreement, reflects the division as set forth
in the agreement except for the court's award to Ms. Smith of seventy-five percent of the GOSI
retirement benefits. The one-page memorandum from the trial court refers to the 1982 Agreement
and "give[s] [it] a lot of weight." The memorandum summarizes and reiterates the awards as listed
in the decree and explains that it awards as such in order to "balanc[e] the equities" and in
consideration of Mr. Smith's failure "to maintain life insurance on his life with wife as beneficiary
under paragraph VII" of the agreement. It appears that the trial court treats the agreement as
enforceable and that it simply construes the agreement to not cover the GOSI retirement benefits,
as it wrote: "However, [the agreement] relates to 'most' of the community and where it doesn't divide
an interest the court must act." 
2. See Egelhoff v. Egelhoff, 532 U.S. 141, 146 (2001); Keen v. Weaver, No. 01-0447, 2003 Tex.
LEXIS 82 (June 19, 2003); Barnett v. Barnett, 67 S.W.3d 107, 122 (Tex. 2001).
3. The Texas Family Code restricts the available defenses to enforcement of property
agreements executed on or after September 1, 1993. See Tex. Fam. Code Ann. § 4.105 (Vernon
1998). A party can no longer assert a common-law contract defense against a properly executed
partition agreement. Mr. and Ms. Smith entered into this agreement in 1982, well before
Section 4.105 limited the available defenses. The common-law defenses of failure of consideration
and ambiguity are still available against the Smiths' agreement.
4. Ms. Smith also asserts that the 1982 Agreement should fail due to a failure of consideration. 
We find this contention without merit. This is not a matter of failure of consideration; rather, it
concerns issues of breach, an issue we will address in our discussion. Clearly, there was adequate
consideration for an enforceable contract.